STATE OF MICHIGAN
COURT OF APPEALS

RAIDA ADAS,

        Plaintiff-Appellant,

v

WILLIAM BEAUMONT HOSPITAL,
BEAUMONT HOSPITALS, and MARIANNE
FRANCO, M.D.,

        Defendants,

and

ROYAL OAK SURGICAL ASSOCIATES, P.C.,
and PETER CZAKO, M.D.,

        Defendants-Appellees.

UNPUBLISHED
November 17, 2015

No. 318397
Oakland Circuit Court
LC No. 2011-116424-NH

Before: METER, P.J., and WILDER and RONAYNE KRAUS, JJ.

PER CURIAM.

Plaintiff, Raida Adas, appeals as of right the trial court's May 29, 2013 order entering a judgment of no cause for action in favor of defendants Royal Oak Surgical Associates, P.C., and Peter Czako, M.D., in this medical malpractice action.[1] Plaintiff also appeals numerous other orders entered by the trial court in this matter. We affirm in part, reverse in part, and remand for modification of the order taxing costs consistent with this opinion.

## I. FACTS AND PROCEEDINGS

This case arises from a thyroidectomy procedure performed by Dr. Czako on plaintiff on July 28, 2008. It is undisputed that the "Acknowledgment of Informed Consent" signed by plaintiff before the surgery indicated that the procedure to be performed was a "Left Thyroid

---

[1] The other defendants were dismissed in the trial court.

-1-

Lobectomy/Possible Total." It is also undisputed that Dr. Czako removed plaintiff's entire thyroid during the procedure, beginning with the right side.

On January 24, 2011, plaintiff filed this medical malpractice action alleging, *inter alia*, that Dr. Czako negligently performed a total thyroidectomy and failed to obtain plaintiff's consent for a total thyroidectomy. Plaintiff further alleged that she suffers from hypothyroidism, hypoparathyroidism, and hypocalcemia, which she attributed to the total thyroidectomy and the damage to her parathyroid glands.

On June 22, 2012, before the first trial in this matter, plaintiff filed a motion to compel answers to her interrogatories, expert interrogatories, and requests for production of documents that had previously been served on defendants. She also requested that discovery be reopened and the scheduled trial be adjourned. Before the hearing on the motion was held, defendants filed responses to the discovery requests. Plaintiff, however, believed the responses were "nonresponsive, incomplete and willfully evasive" and, on July 18, 2012, filed a motion to compel more specific answers, reopen discovery, and adjourn trial. Defendants responded that the reason for the delay was plaintiff's failure to accommodate their requests for discovery in electronic format and they denied that the responses were nonresponsive, incomplete, and willfully evasive. They argued that plaintiff had ample time to complete discovery, but failed to depose defendants' experts or make her own expert available for deposition. On July 25, 2012, a hearing was held on plaintiff's motion. The trial court summarized the parties' arguments and stated that the case was, at that point, one and a half year's old, stated that the parties had "not worked together very professionally," and denied the motion.[2]

The first trial began on October 8, 2012. Plaintiff testified that after test results showed that a nodule on the left side of her thyroid was suspicious for capillary carcinoma, she met with Dr. Czako. Dr. Czako informed plaintiff that it would be necessary to remove the left side. He also informed her that a total thyroidectomy may be needed, but he did not inform her that there would be permanent injury. Plaintiff signed the "Acknowledgment of Informed Consent" before the surgery. Just before the surgery, plaintiff asked to speak with Dr. Czako and she confirmed with him that he was going to first remove the left side, have a "frozen section"[3] performed, and if it was cancerous, then also remove the right side. When plaintiff woke up from the surgery, she discovered that a total thyroidectomy had been performed, although there was no cancer. Plaintiff now suffers from hypoparathyroidism and hypocalcemia.

On cross-examination, plaintiff admitted that when she met with Dr. Czako she was aware that test results had shown that she had a small nodule on the right side of her thyroid, in

---

[2] Plaintiff filed an application for leave to appeal this order with this Court, which was denied. *Adas v William Beaumont Hosp*, unpublished order of the Court of Appeals, entered May 24, 2013 (Docket No. 311856).

[3] Dr. Czako subsequently explained that a frozen section is a technique whereby a specimen is given to the pathologist during the operation and the pathologist freezes the cells and views them under a microscope.

addition to the larger nodule on the left side. Plaintiff testified that Dr. Czako that he would remove the whole thyroid only if there was cancer. She recalled Dr. Czako telling her that the chance of harm to her parathyroids was slim. He told her that he was going to "tickle" the parathyroid gland and this could cause the parathyroid hormone to be low for a short period of time. Plaintiff testified that Dr. Czako told her that all of the side effects would be temporary. When asked if Dr. Czako ever said that there could be permanent injury, plaintiff testified that he said he was an expert and it was a "very slim chance." That is why plaintiff trusted him. When asked if Dr. Czako told her that the risk of permanent injury is estimated at one percent, plaintiff stated "It's very slim." She did not recall Dr. Czako stated that permanent injury could require life-long calcium or vitamin D supplementation.

Dr. Czako testified at the first trial that he had recommended plaintiff undergo a total thyroidectomy because of the enlarging nodule with suspicious calcifications and the fact that a nodule had developed on the other side. He testified that the indication of "possible total" on the "Acknowledgment of Informed Consent" meant that "if, in the operating room, a judgment or decision is made to proceed with a total thyroidectomy, [it] is possible that may be occurring in the conduct of the operation." It did not mean that the left side would be removed first. The indication of "left" merely identified the location of the dominant nodule. Dr. Czako explained that he removed the right side first because, generally, an operation begins with the resident on the right side of the table and Dr. Czako on the left side. This allows Dr. Czako to evaluate the right side and make a decision. If he sees abnormalities, he will proceed by removing the right thyroid lobe and then the left thyroid lobe. In this case, he examined the right side and believed it was irregular and there was a firm nodule, which was concerning given the suspicious finding on the left lobe. He did not consider doing a frozen section because prior test results indicated that there was a 90 percent chance that the nodule was malignant. He testified that he uses a frozen section if he believes it will change the conduct of the operation.

Plaintiff's expert, Dr. Steven Swartz, testified that the small, three millimeter nodule on the right side of plaintiff's thyroid was insignificant if there was no cancer anywhere else in the thyroid. Dr. Swartz would have advised plaintiff that she needed a left thyroid lobectomy with a frozen section to determine whether the suspicious nodule was cancerous and, if it was, she would need a total thyroidectomy. The indication on the "Acknowledgment of Informed Consent" that the procedure was "Left Thyroid Lobectomy/Possible Total" means that the doctor would "take out half of the thyroid gland and, presumably, have it looked at by the pathologist to determine whether or not the rest of the thyroid gland needs to come out if cancer is present." If plaintiff had agreed to a total thyroidectomy, the consent form would have indicated "total thyroidectomy" and "potentially, even total thyroidectomy and no dissection." By indicating that the procedure was "Left Thyroid Lobectomy/Possible Total" plaintiff consented to removal of the left side and sending it to the pathologist for them to perform a frozen section and determine whether there appeared to be cancer.

Dr. Swartz admitted that a total thyroidectomy is one acceptable option when a fine needle aspiration, as was performed on plaintiff, is suspicious for cancer. He testified that it is an acceptable practice as long as it is explained to the patient that the doctor could remove half and check it, or the doctor could remove the whole thing, but there may be complications. Dr. Swartz agreed that a surgeon may make the decision regarding how much of the thyroid to

remove after the incision is made, but the most important piece of information that the surgeon would consider is the result of the frozen section. The problem with frozen sections is that sometimes thyroid cancer cells look like normal thyroid cells. However, in this case, because the thyroid was not cancerous, it would not have looked like cancer.

On the second day of trial, defendants moved for directed verdict. Plaintiff's counsel clarified that plaintiff was alleging improper surgical care based on Dr. Czako's decision to remove the right side first, failure to perform a frozen section, and damaging of the parathyroids, in addition to her claim of lack of informed consent. The trial court denied the motion for directed verdict regarding improper surgical care. With regard to the issue of informed consent, defendants argued that plaintiff acknowledged that she gave permission to do a total thyroidectomy and she signed a document indicating that no additional promises were made. Plaintiff responded that the total thyroidectomy was conditioned on a finding of cancer. The trial court took the issue under advisement. After a recess for lunch, the trial court ruled on defendants' motion for directed verdict on the issue of lack of informed consent. The trial court stated:

> The testimony is undisputed that plaintiff signed an informed consent allowing Dr. Czako to remove the thyroid. It is not, as plaintiff says, based upon a condition there be no cancer. No instances -- on two instances the Court requested counsel to identify the conditions upon which the thyroidectomy could be based and none were recited. On the other hand, the evidence is unrebutted the defendant Doctor, that his licensing to which he agreed was -- was no -- that he agreed to no other promise was given to a patient than that which was stated. Here that included a possible thyroidectomy and that is what occurred.
>
> The facts of this case are regrettable, unfortunate, and sad, but from all the Court has heard the Doctor did no more than or less than that which was required. Plaintiff, the Court finds, was informed of the risk of the procedure. Plaintiff was advised of the risks of temporary or permanent injury to the thyroids. Plaintiff chose to undergo the thyroidectomy procedure and knowledge of those risks and complications were -- were told to her.
>
> The Court finds that plaintiff cannot establish its claim of malpractice as a matter of law, and therefore dismisses plaintiff's case.

The trial court then indicated that it would dismiss the jury.

Defendants subsequently presented a proposed order indicating that defendants' motion for directed verdict had been granted and entering judgment of no cause for action. Plaintiff objected to the proposed order, arguing that the trial court had denied the motion.

On November 21, 2012, plaintiff filed a motion for entry of an order compelling payment of expert witness fees. Plaintiff argued that defendants had agreed to depose Dr. Swartz at his office in Richmond, Virginia, but subsequently requested that the deposition be taken at a

videoconference center instead. Plaintiff argued that defendants should be required to pay for Dr. Swartz's travel time to and from the videoconference location under MCR 2.302(B)(4)(c)(i). The trial court denied plaintiff's motion.

On November 29, 2012, the trial court entered an order granting in part and denying in part defendant's motion for directed verdict. The order indicated that defendants' motion for directed verdict regarding plaintiff's claim of negligence and breach of the standard of care in performing the surgery was denied, but the remainder of defendants' motion for directed verdict was granted.

On December 17, 2012, defendants filed a motion for reconsideration of the November 29, 2012 order. Defendants argued that the November 29, 2012 order did not accurately reflect the trial court's decision dismissing the entire case.

On December 18, 2012, plaintiff also filed a motion for reconsideration of the November 29, 2012 order. Plaintiff argued that the trial court's decision to grant defendants' motion for directed verdict on plaintiff's claim of lack of informed consent constituted palpable error. She also argued that the trial court erred in dismissing the jury when plaintiff's claim of negligence and breach of the standard of care in the performance of the surgery was still pending.

On January 4, 2013, the trial court entered an order granting defendants' motion for reconsideration of the November 29, 2012 order. The trial court explained that, at the hearing on defendants' motion for directed verdict, the trial court had discussed the issue of liability, but failed to address the issue of proximate cause. It ruled that it should have granted defendants' motion regarding proximate cause. The trial court, therefore, amended the November 29, 2012 order to reflect that defendants' motion for directed verdict regarding causation was granted *nunc pro tunc*.

On February 11, 2013, the trial court entered an opinion and order granting plaintiff's motion for reconsideration of the January 4, 2013 order.[4] The trial court concluded that defendants' motion for directed verdict "should have been denied because questions of fact existed for the jury in light of Plaintiff's expert's testimony and the testimony of plaintiff and Dr. [sic]." The trial court set the matter for trial.

On February 13, 2012, defendants filed a motion in limine to limit the evidence at the second trial to plaintiff's claim of negligence in performing a total thyroidectomy. At a hearing on February 20, 2013, plaintiff argued that the February 11, 2013 order reinstated the lack of informed consent claim. The trial court explained that it had granted directed verdict on both the question of negligence and informed consent, but then reversed its position and intended to reinstate the negligence claim. However, the trial court did not believe that the question of informed consent should have gone to the jury "where it was so clear here that she signed a--a

---

[4] Plaintiff actually filed a motion for reconsideration of the November 29, 2012 order, not the January 4, 2013 order.

-5-

patient consent form, an informed consent for indicating that she agreed to a total thyroidectomy." The trial court, therefore, ruled that the matter would go to trial on the question of negligence only. On February 20, 2013, the trial court entered an order granting defendants' motion in limine and limiting the evidence at trial to plaintiff's claim of negligence and proximate causation. The trial court ruled that plaintiff's claim of lack of informed consent remained dismissed. On February 20, 2013, the trial court entered an order granting defendants' motion in limine and limiting the evidence at trial to plaintiff's claim of negligence and proximate causation. The order indicated that the claim of lack of informed consent remained dismissed. On February 20, 2013, the trial court also entered an order granting defendants' motion to adjourn trial and stating that trial on plaintiff's claim of negligence and proximate causation was set for April 29, 2013.

At a hearing on March 20, 2013, the trial court reiterated its rulings:

> [T]his Court's intent at the time of the directed verdict, it--it is this Court's opinion that there was sufficient evidence that existed on plaintiff's claim of medical malpractice, including the issue of proximate cause, which this Court believes was more a question of fact for the jury, not a question of law for the Court, so that the jury must decide plaintiff's claim as to negligence; that including duty, breach of duty, proximate cause and damages. However, plaintiff's theory regarding informed consent of lack thereof, was and still remains dismissed.

The second trial began on April 29, 2013. On the first day of the trial, plaintiff moved to preclude the use of the second de bene esse video deposition of defendants' expert, Dr. Daniel Borreson. Plaintiff argued that Dr. Borreson's deposition was taken before the first trial and there was no authority for taking a second deposition. Plaintiff argued that Dr. Borreson was able to review his first deposition and he did not have plaintiff's complete records from her current healthcare provider. Plaintiff's counsel claimed that defense counsel did not allow her to print certain exhibits during the deposition. Defendants' responded that the deposition was properly noticed, the case was framed differently for the second trial, and new records were provided to Dr. Borreson. The trial court denied the motion, finding that it was "a newly poised case in the absence of informed consent." The trial court further found that plaintiff failed to show prejudice regarding the admission of exhibits at the deposition.

Plaintiff and Dr. Czako testified at the second trial. The direct examination deposition testimony of Dr. Swartz was read to the jury. After the direct examination of Dr. Swartz was read, defense counsel indicated that he would waive his cross-examination and save it for his case. When the reader was not present to read the cross-examination, the trial court ordered that the cross-examination portion of the transcript be admitted in exhibit form and given to the jury in lieu of the reading. Plaintiff objected to the jury only being given the cross-examination testimony. The trial court ruled that it would admit the the cross-examination and redirect examination portion of the transcript, but not the direct examination because it was already on the record. The video deposition of defendants' expert, Dr. Borreson, was played for the jury.

On May 1, 2013, the jury found that defendant was not professionally negligent. On May 29, 2013, the trial court entered a judgment of no cause for action against defendants. The order allowed defendants to seek taxable costs pursuant to the Michigan Court Rules.

On June 19, 2013, plaintiff filed a motion for a new trial in which she argued that the trial court erred in allowing defendants to take a second video deposition of Dr. Borreson and use that deposition at the second trial. She also argued that the trial court erred in failing to allow the transcript of the cross-examination of plaintiff's expert to be read at the second trial.

In their amended motion for taxation of costs pursuant to MCR 2.625, defendants sought "costs and expenses associated with Dr. Borreson's case review, time required to prepare for his testimony as an expert witness, and trial testimony" in the amount of $9,835. They also sought a deposition transcript fee of 965.45 and $150 for trial of the action. They requested total costs associated with Dr. Borreson's case review, preparation, and trial testimony in the amount of $10,800.45. On July 19, 2013, the trial court entered an opinion and order granting in part defendants' motion for taxation of costs. The trial court allowed defendants to recover the deposition transcript fee of $965.45, a trial fee of $150, and reasonable trial preparation and video deposition fee of $7,675. The trial court reduced the amount sought by defendants by 5.4 hours, finding that "the time spent meeting with counsel and in preparation of the second trial deposition unreasonable and otherwise not recoverable as part of an expert witness fee." Thus, the trial court ruled that defendants were entitled to taxable costs of $8,790.45. The trial court denied plaintiff's motion for reconsideration of this order.

A hearing was held on plaintiff's motion for a new trial on September 11, 2013. The trial court denied plaintiff's motion. Regarding the second deposition of Dr. Borreson, the trial court found that defendants were permitted under the court rules to depose their expert witness and offer the deposition into evidence at trial, plaintiff's objection was untimely, and plaintiff failed to provide any legal authority that a witness cannot be redeposed. On September 12, 2013, the trial court entered an order denying plaintiff's motion for a new trial and granting defendants' motion for entry of a final order closing the case.

## II. DISMISSAL OF THE JURY AT THE FIRST TRIAL

Plaintiff first contends that the trial court erred in dismissing the jury in the first trial when it had denied defendants' motion for directed verdict regarding plaintiff's claim of negligence and breach of the standard of care in performing the surgery. We conclude that this issue is moot.

On the second day of the first trial, the trial court heard arguments on defendants' motion for directed verdict. The trial court denied the motion as it related to plaintiff's claim of improper surgical care and took the issue of informed consent under advisement. After a recess, the trial court ruled that plaintiff failed to establish her claim and granted defendants' motion. The trial court then stated that it would dismiss the jury. However, given that the trial court had previously denied the motion for directed verdict regarding plaintiff's claim of improper surgical care and gave no indication that it was changing its initial ruling on that issue, that issue remained for trial, and the trial court erred in dismissing the jury. While it was error to dismiss the jury, the trial court thereafter held a second trial on plaintiff's claim of negligence in the

performance of the surgery.  Given that a second trial was held, this issue is moot.  See *Attorney General v Pub Serv Comm*, 269 Mich App 473, 485; 713 NW2d 290 (2005) ("An issue is moot if an event has occurred that renders it impossible for the court to grant relief.  We will review a moot issue only if it is publicly significant and is likely to recur, yet is likely to evade judicial review.").  In this case, the trial court's decision to hold a second trial has rendered it impossible to grant relief on this issue and the circumstances do not warrant review.

## III.  DISMISSAL OF PLAINTIFF'S CLAIM OF LACK OF INFORMED CONSENT

Plaintiff next contends that the trial court erred in granting defendants' motion for directed verdict and dismissing plaintiff's claim of lack of informed consent at the first trial.  We disagree.

> We review directed verdicts de novo.  When evaluating a motion for directed verdict, the court must consider the evidence in the light most favorable to the nonmoving party, making all reasonable inferences in the nonmoving party's favor.  A directed verdict is appropriate where reasonable minds could not differ on a factual question.  [*Chouman v Home Owners Ins Co*, 293 Mich App 434, 441; 810 NW2d 88 (2011) (citation and quotation marks omitted).]

"In a medical malpractice case, the plaintiff must establish: (1) the standard of care, (2) breach of that standard of care, (3) injury, and (4) proximate causation between the alleged breach and the injury." *Pennington v Longabaugh*, 271 Mich App 101, 104; 719 NW2d 616 (2006).  The plaintiff must present expert testimony "to establish a causal link between the alleged negligence and the alleged injury." *Id*.  "The doctrine of informed consent requires a physician to warn a patient of the risks and consequences of a medical procedure." *Wlosinski v Cohn*, 269 Mich App 303, 308; 713 NW2d 16 (2005).  The Michigan Supreme Court has stated:

> Claims of negligence based on the failure of a physician or surgeon to adequately obtain informed consent before a procedure or to otherwise fail to instruct or advise a patient come within the general rule regarding the need for expert testimony. Consequently, if the necessity of giving the particular information is within the general knowledge of laymen, expert testimony is not required. However, if laymen would not necessarily know what information a physician should provide the patient, expert testimony is required." [*Paul v Lee*, 455 Mich 204, 212; 568 NW2d 510 (1997), overruled on other grounds by *Smith v Globe Life Ins Co*, 460 Mich 446, 455-456 n 2 (1999) (citation omitted).]

In the first trial in this case, plaintiff presented the expert testimony of Dr. Swartz regarding the issue of informed consent.  The nature and extent of information that a physician should give to a patient undergoing a total thyroidectomy comes within the general rule requiring expert testimony.  See *Paul*, 455 Mich at 213 ("The nature and extent of information that a physician should give to a vasectomy patient before performing that procedure clearly comes within the general rule rather than the exception.  The risks and necessary postoperative follow-up attendant to a vasectomy is not within the general knowledge of laymen.  Nor do laymen generally know what information the doctor should give or how the information should be explained.").  However, the question here is not the nature and extent of information that should

have been given, but rather the scope of the consent and whether the procedure performed by Dr. Czako was within the consent given by plaintiff. This question is resolved by the language of the "Acknowledgment of Informed Consent." The "Acknowledgment of Informed Consent" provided that the procedure to be performed was a "Left Thyroid Lobectomy/Possible Total." While plaintiff testified that Dr. Czako was supposed to remove the right side first, have a frozen section performed, and only remove the right side if cancer was found, the "Acknowledgment of Informed Consent" provided no such conditions or qualifications. Dr. Czako determined that a total thyroidectomy was necessary and proceeded within the scope of the consent provided by plaintiff. While reasonable minds could have differed on the question whether Dr. Czako properly performed a total thyroidectomy (plaintiff's claim of improper surgical care), there was no question of fact that plaintiff consented to a total thyroidectomy.

Nonetheless, even considering plaintiff's expert testimony, we conclude that such testimony did not create a question of fact on the issue of informed consent. Dr. Swartz's testimony was not definitive and it conflicted with Dr. Czako's testimony. Dr. Swartz testified that "Left Thyroid Lobectomy/Possible Total" means that the doctor would "take out half of the thyroid gland and, presumably, have it looked at by the pathologist to determine whether or not the rest of the thyroid gland needs to come out if cancer is present." He testified that if plaintiff had agreed to a total thyroidectomy, the consent form would have indicated "total thyroidectomy" and potentially have also indicated "no dissection." However, Dr. Swartz only stated that this language meant *presumably* the pathologist would look at it to determine if there was cancer; he did not say that a frozen section was the only way that such a determination could be made. He also said that if plaintiff had agreed to a total thyroidectomy the form *potentially* have indicated "no dissection"; he did not say that the form would have necessarily included such language. In this case, the "Acknowledgment of Informed Consent" did not indicate that a frozen section would or would not be performed. And, the "Acknowledgment of Informed Consent" did indicate that a total thyroidectomy was possible. While Dr. Swartz stated that the frozen section would be the most important piece of information that a surgeon would consider, he did not say that it was the only information.

Contrarily, Dr. Czako testified that the indication of "possible total" on the "Acknowledgment of Informed Consent" meant that "if, in the operating room, a judgment or decision is made to proceed with a total thyroidectomy, [it] is possible that may be occurring in the conduct of the operation." It did not mean that the left side would be removed first. The indication of "left" merely identified the location of the dominant nodule. After examining the right side, Dr. Czako believed it was necessary to remove the entire thyroid and did not believe a frozen section would change his opinion.[5] Given the language of the "Acknowledgment of Informed Consent," we conclude that there was no question of fact that plaintiff consented to a total thyroidectomy.

---

[5] Again, whether this determination was reasonable goes to the issue of whether the procedure was negligently performed, which was decided by the jury at the second trial.

-9-

Plaintiff also claims that the trial court erred in finding that she was informed of the risks of the procedure when she clearly testified that defendants failed to inform her of the risk of permanent damage to the parathyroids. Plaintiff makes this argument in one sentence with of her brief on appeal, without citation to the record or authority. Accordingly, plaintiff has abandoned this issue by failing to properly brief it on appeal. See *Yee v Shiawasee Co Bd of Comm'rs*, 251 Mich App 379, 406; 651 NW2d 756 (2002). Nonetheless, we conclude that there was no question of fact that plaintiff was informed of the risk of permanent injury to her parathyroids. Although plaintiff maintained that Dr. Czako told her that any injury would be temporary, she also admitted that he informed her that there was a slim change of permanent injury.

Because plaintiff failed to establish a question of fact regarding breach of the standard of care, the trial court did not err in granting a directed verdict in favor of defendants on plaintiff's claim of lack of informed consent.[6]

## IV. ORDER GRANTING DEFENDANTS' MOTION IN LIMINE

Plaintiff contends that the trial court erred in granting defendants' motion in limine to limit the evidence at the second trial to plaintiff's claim of negligence and breach of the standard of care in performing the surgery when that claim was dismissed by the January 4, 2013 order. Plaintiff also argues that it was error for the trial court to exclude evidence at the second trial of her claim of lack of informed consent because that claim remained pending. We disagree.

Plaintiff misconstrues the trial court's rulings. On February 20, 2013, the trial court granted defendants' motion in limine and limited the evidence at trial to plaintiff's claim of negligence and proximate causation, specifically stating that plaintiff's claim of lack of informed consent remained dismissed. Plaintiff is correct that, on January 4, 2013, the trial court reversed its earlier ruling and granted defendants' motion for directed verdict on causation. However, on February 11, 2013, the trial court granted plaintiff's motion for reconsideration of the January 4, 2013 order and concluded that defendants' motion for a directed verdict should have been denied. As noted above, plaintiff actually filed a motion for reconsideration of the November 29, 2012 order, but the February 11, 2013 order clearly reversed the January 4, 2013 order. Given that the November 29, 2012 order denied defendants' motion for directed verdict regarding the claim of negligence in the performance of the surgery, the January 4, 2013 and February 11, 2013 orders necessarily applied to that claim. Moreover, although the February 11, 2013 order summarized plaintiff's arguments regarding the issue of lack of informed consent, it was not necessarily ruling on those claims. However, to the extent that it was unclear whether the trial court's rulings on January 4, 2013, and February 11, 2013, applied only to the negligent performance claim or also the lack of informed consent claim, the trial court clarified its rulings at the hearing on March 20, 2013:

---

[6] Within this argument, plaintiff also argues that the trial court erred in dismissing defendant Royal Oak Surgical Associates, P.C. While transcript of the hearing does show that the trial court dismissed this defendant, there was no order entered dismissing this defendant and the judgment entered on May 29, 2013 was entered in favor of Dr. Czako and Royal Oak Surgical Associates, P.C.

[T]his Court's intent at the time of the directed verdict, it--it is this Court's opinion that there was sufficient evidence that existed on plaintiff's claim of medical malpractice, including the issue of proximate cause, which this Court believes was more a question of fact for the jury, not a question of law for the Court, so that the jury must decide plaintiff's claim as to negligence; that including duty, breach of duty, proximate cause and damages. However, plaintiff's theory regarding informed consent of lack thereof, was and still remains dismissed.

Accordingly, plaintiff is incorrect that the claim of lack of informed consent remained pending. Thus, the trial court did not err in excluding evidence of her claim of lack of informed consent at the second trial.

Plaintiff further argues that the February 20, 2011 order was improperly entered because it was not provided to plaintiff for approval before being submitted to the trial court in violation of MCR 2.602(B)(2). We disagree.

Plaintiff failed to raise this issue below, therefore, it is unpreserved. See *Polkton Charter Twp v Pellegrom*, 265 Mich App 88, 95; 693 NW2d 170 (2005). We review unpreserved issues for plain error affecting substantial rights. *Local Emergency Fin Assistance Loan Bd v Blackwell*, 299 Mich App 727, 738; 832 NW2d 401 (2013). MCR 2.602(B)(2) provides: "The court shall sign the judgment or order when its form is approved by all the parties and if, in the court's determination, it comports with the court's decision." However, this is not the only method by which an order may be entered. MCR 2.602(B) provides that "[a]n order or judgment shall be entered by one of the following methods[.]" MCR 2.602(B)(1) provides that "The court may sign the judgment or order at the time it grants the relief provided by the judgment or order." At the hearing on February 20, 2013, the trial court ruled on defendants' motion in limine and entered an order consistent with its rulings. Accordingly, there was no plain error affecting plaintiff's substantial rights.

## V. ORDER GRANTING DEFENDANTS' MOTION FOR RECONSIDERATION

Plaintiff argues that the trial court erred in granting defendants' motion for reconsideration because the issue of causation was addressed at the hearing on defendants' motion for directed verdict. We conclude that this issue is moot.

"We review for an abuse of discretion a trial court's decision on a motion for reconsideration. An abuse of discretion occurs if the trial court's decision falls outside the range of principled outcomes." *Macomb Co Dep't of Human Servs v Anderson*, 304 Mich App 750, 754; 849 NW2d 408 (2014) (citations omitted). On January 4, 2013, the trial court entered an order granting defendants' motion for reconsideration of the November 29, 2012 order, which had denied defendants' motion for directed verdict on the claim of negligence in performing the surgery. The trial court explained in the January 4, 2013 order that, at the hearing on defendants' motion for directed verdict, the trial court had discussed the issue of liability, but failed to discuss proximate cause. It ruled that it should have granted defendants' motion regarding proximate cause. The trial court, therefore, amended the November 29, 2012 order to reflect that defendants' motion for directed verdict regarding causation was granted *nunc pro tunc*. A

-11-

review of the hearing on defendants' motion for directed verdict reveals that, as the trial court found, causation was discussed, but it was not explicitly ruled on. Nonetheless, to the extent the trial court erred in granting the motion on this basis, the January 4, 2013 order was reversed on February 11, 2013, when the trial court entered an opinion and order granting plaintiff's motion for reconsideration of the January 4, 2013 order and ruled that defendants' motion for directed verdict should have been denied. Because plaintiff's claim of negligent performance was reinstated and a trial was held on this claim, this issue is moot. See *Attorney General*, 269 Mich App at 485.

## VI. CAUSATION

Plaintiff also contends that the trial court erred in finding that no questions of fact existed regarding causation. For the same reasons discussed above in Issue V, this issue is moot because plaintiff's claim of negligent performance was reinstated and presented to the jury at the second trial. See *Attorney General*, 269 Mich App at 485.

## VII. ORDER GRANTING DEFENDANTS' MOTION TO ADJOURN TRIAL

Plaintiff argues that the trial court erred in entering the order adjourning trial stating that the evidence at the second trial was limited to plaintiff's claim of negligence and proximate causation when that claim had previously been dismissed. The trial court made the same rulings in the order granting defendants' motion to adjourn trial as in the order granting defendants' the motion in limine. For the reasons discussed in Issue IV above regarding the order granting defendants' motion in limine, there was no error.

## VIII. SECOND DE BENE ESSE VIDEO DEPOSITION

Plaintiff contends that the trial court erred in allowing defendants to take a second de bene esse video deposition of their expert, Dr. Borreson, for the second trial. We disagree.

"We review a trial court's decision to grant or deny discovery for abuse of discretion." *Henderson v Dep't of Treasury*, 307 Mich App 1, 8; 858 NW2d 733 (2014) (citation and quotation marks omitted). MCR 2.308, regarding the use of depositions in court proceedings, provides in part: "None of the foregoing errors or irregularities, even when not waived, *or any others*, preclude or restrict the use of the deposition, except insofar as the court finds that the errors substantially destroy the value of the deposition as evidence or render its use unfair or prejudicial." MCR 2.308(5) (emphasis added).

Plaintiff claims that there is no authority for taking a second deposition. However, the trial court concluded that the case was "newly poised" at the second trial and that plaintiff failed to show any prejudice. Given that the lack of informed consent issue had been dismissed and plaintiff failed to articulate any prejudice she suffered by allowing the second deposition, we cannot say that this was an abuse of discretion. Moreover, given the lack of prejudice, there was no basis to preclude use of the deposition. See MCR 2.308(5).

## IX. SUFFICIENT EVIDENCE IN SUPPORT OF DEFENSE

Plaintiff contends that defendants failed to produce sufficient evidence to support a valid defense when the second deposition of Dr. Borreson was admitted in error. Plaintiff only argues that there was insufficient evidence without Dr. Borreson's testimony. However, as discussed above in Issue VIII, plaintiff fails to establish any error in the use of the second deposition. Therefore, this argument also fails.

## X. TRIAL COURT'S REFUSAL TO ALLOW THE COMPLETE TRANSCRIPT OF PLAINTIFF'S EXPERT'S TESTIMONY TO BE READ INTO EVIDENCE

Plaintiff argues that the trial court erred in ruling that the complete transcript of plaintiff's expert witness would not be allowed at the second trial. We disagree.

Plaintiff did not object at trial to the trial court's refusal to read the complete transcript;[7] therefore, this issue is unpreserved. See *Polkton Charter Twp*, 265 Mich App at 95. We review unpreserved issues for plain error affecting substantial rights. *Blackwell*, 299 Mich App at 738. Plaintiff, however, did raise this issue in her motion for a new trial. We review the trial court's ruling on a motion for a new trial for an abuse of discretion. *Rental Props Owners Ass'n of Kent Co v Kent Co Treasurer*, 308 Mich App 498, 531; 866 NW2d 817 (2014).

Plaintiff fails to explain how the failure to read the cross-examination of her own expert witness prejudiced her. As defendants argue, it benefited plaintiff to not subject her expert to cross-examination, which left his direct examination testimony unchallenged. Nonetheless, the trial court provided the transcript of the cross-examination to the jury in exhibit form. Thus, plaintiff fails to establish plain error affecting her substantial rights and the trial court did not abuse its discretion in denying the motion for a new trial.

## XI. ORDER DENYING PLAINTIFF'S MOTION TO COMPEL MORE SPECIFIC ANSWERS

Plaintiff contends that the trial court erred in denying her motion to compel more specific answers to plaintiff's interrogatories, expert interrogatories, and request for production of documents based on its finding that her motion was untimely. We disagree.

We review the trial court's discovery rulings for an abuse of discretion. *Henderson*, 307 Mich App at 8. At the July 25, 2012 hearing, the trial court explained that plaintiff filed a motion to compel defendant to more fully and completely answer the discovery requests served on April 11, 2012. A hearing was scheduled for July 18, 2012, but before that date defendants responded and the hearing was canceled. After reviewing defendants' answers, however, plaintiff argued that the answers were evasive and not responsive and requested discovery be reopened and trial adjourned. Defendants responded that they answered as completely as

---

[7] Plaintiff's counsel only objected to the jury being given the cross-examination portion of the transcript, but not the direct examination portion, and argued that the jury should be given the entire transcript.

possible and that it was plaintiff who was dilatory. The trial court stated that the case was, at that point, one and a half year's old, the parties had "not worked together very professionally," and denied the motion. Contrary to plaintiff's argument, the trial court did not rule that the motion to compel was untimely. Rather, the trial court denied these requests based on the age of the case and its finding that both parties were not working together professionally. This ruling did not constitute an abuse of discretion.

XII. ORDER GRANTING IN PART DEFENDANTS' MOTION FOR TAXATION OF COSTS

Plaintiff contends that the trial court erred in granting in part defendants' motion for taxation of costs. Plaintiff argues that the trial court erred in (1) reducing the expert hours by only 5.4 hours rather than 5.9 hours; (2) using $9,835 as the total amount of the first and second trial depositions rather than $7,135; (3) granting the deposition preparation time of 1.25 hours for the continuation of the first video deposition when it was the expert who stopped the deposition; (4) granting the transcript cost of $965.45; and (5) granting any expenses incurred for the second video deposition. We agree in part.

"We review for an abuse of discretion the trial court's ruling on a motion to tax costs under MCR 2.625. However, whether a particular expense is taxable as a cost is a question of law. We review questions of law de novo." *Guerrero v Smith*, 280 Mich App 647, 670; 761 NW2d 723 (2008) (citations omitted).

First, we agree with plaintiff that the trial court erred in reducing the expert hours by only 5.4 hours. The trial court stated that it reduced the hours by 5.4 "finding the time spent meeting with counsel and in preparation of the second trial deposition unreasonable and otherwise not recoverable." However, according to the documents submitted by defendants in support of their motion, the time spent meeting with counsel and in preparation for the second video deposition was 5.5 hours. Thus, consistent with its ruling, the trial court should have reduced the hours by 5.5 hours.

Although plaintiff contends that the .4 hours for a pretrial meeting with counsel before the first trial was not recoverable, there is no indication that the trial court found the time spent meeting with counsel and in preparation for the first deposition unreasonable. "MCL 600.2164(1) authorizes a trial court to award expert witnesses fees as an element of taxable costs[,] and "[t]he trial court . . . has discretion under MCL 600.2164 to include fees for the expert's preparation time." *Guerrero*, 280 Mich App at 675 (citations and quotation marks omitted). Similarly, it was within the trial court's discretion to include the 1.25 hours of preparation time for the continuation of the first video deposition.

Next, we agree with plaintiff that the trial court incorrectly used a total of $9,835,[8] but we also disagree with the figure proposed by plaintiff. Plaintiff is correct that the sum of the billings for the two depositions was $7,135. However, plaintiff fails to account for other bills from October 2011 ($600), February 2012 ($600), and August 2012 ($900). The trial court, however, appears to have erroneously counted the October 2011 bill twice, likely because it was resubmitted in a second bill and, thus, appeared twice in the billing documents. Accordingly, we conclude that the proper total was $9,235.

We disagree with plaintiff, however, that the transcript cost of $965.45 was not recoverable. MCL 600.2549 provides:

> Reasonable and actual fees paid for depositions of witnesses filed in any clerk's office and for the certified copies of documents or papers recorded or filed in any public office shall be allowed in the taxation of costs only if, at the trial or when damages were assessed, the depositions were read in evidence, except for impeachment purposes, or the documents or papers were necessarily used.

Plaintiff argues that the transcript was only filed after her objection and to allow recovery would render the statute meaningless. However, given that the transcript was filed before the trial court awarded costs, there was no error. See *Guerroro*, 280 Mich App at 674 ("The costs of copying the video depositions at issue here were properly taxed because the depositions were filed in the clerk's office and used as evidence at trial.").

Lastly, we disagree with plaintiff that any expenses associated with the repeat deposition of Dr. Borreson were not taxable. As discussed above in Issue VIII, plaintiff fails to provide support for her claim that the second video deposition was improper. As such, she fails to establish that the recovery of costs were improper on this basis.

Based on the foregoing, we conclude that the proper amount of taxable costs to which defendants were entitled was $7,035. On remand, the trial court should modify the order taxing costs accordingly, by decreasing the amount of taxable costs from $8,790.45 to $7,035.

## XIII. ORDER DENYING PLAINTIFF'S MOTION TO COMPEL PAYMENT OF EXPERT WITNESS FEE

Finally, plaintiff argues that the trial court erred in denying her motion to compel payment of the expert witness fee for Dr. Swartz's time spent travelling to and from the videoconference center at defendants' request. We disagree.

While the hearing at which the trial court explained its reasoning for denying this motion was not provided on appeal, this issue involves the interpretation of a court rule which we review

---

[8] The trial court must have used $9,835, the total amount requested by defendants, because reducing that amount by 5.4 hours (5.4 hours at $400 an hour equals $2160) equals $7,675.

de novo. *AFP Specialities, Inc v Vereyken*, 303 Mich App 497, 504; 844 NW2d 470 (2014). MCR 2.302(B)(4)(c) provides, in part:

> Unless manifest injustice would result
>
> (i) the court shall require that the party seeking discovery under subrules (B)(4)(a)(ii) or (iii) or (B)(4)(b) pay the expert a reasonable fee for time spent in a deposition, but not including preparation time[.]

The plain language of this rule allows the court to require the party seeking discovery to pay the expert a reasonable fee only for time spent in a deposition. While plaintiff argues that travel time is not preparation time, travel time is clearly not time spent in the deposition. Therefore, the trial court did not err in denying plaintiff's motion.

Affirmed in part, reversed in part, and remanded for modification of the order taxing costs consistent with this opinion. We do not retain jurisdiction. No costs under MCR 7.219, neither party having prevailed in full.

/s/ Patrick M. Meter
/s/ Kurtis T. Wilder