*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

AFT, AFT MICHIGAN, ALPENA
MONTMORENCY-ALCONA ISD
PARAPROFESSIONALS, ALPENA-
MONTMORENCY-ALCONA ISD TEACHERS,
ARENAC EASTERN FEDERATION, BAY
ARENAC SKILLS, BROWN CITY
EMPLOYEES ORGANIZATION, BROWN CITY
FEDERATION OF TEACHERS, CENTER
FEDERATION, CHEBOYGAN OTSEGO
PRESQUE ISLE INTERMEDIATE
PARAPROFESSIONALS AND BUS
PERSONNEL, CHEBOYGAN-OTSEGO
PRESQUE ISLE ISD TEACHERS,
CHEBOYGAN-OTSEGO PRESQUE ISLE
SUPPORT PERSONNEL, CHESANING UNION
AUXILIARY SERVICE EMPLOYEES, CLARE-
GLADWIN ISD FEDERATION, CRAWFORD
AUSABLE BUS DRIVERS FEDERATION,
CRAWFORD AUSABLE
CUSTODIANS/SECRETARIAL FEDERATION,
CRAWFORD AUSABLE SUPPORT STAFF
FEDERATION, CRAWFORD AUSABLE
FEDERATION OF TEACHERS, CRESTWOOD
FEDERATION OF TEACHERS, DEARBORN
FEDERATION OF SCHOOL EMPLOYEES,
DEARBORN FEDERATION OF TEACHERS,
DETROIT ASSOCIATION OF EDUCATIONAL
OFFICE EMPLOYEES, DETROIT
FEDERATION OF PARAPROFESSIONALS,
DETROIT FEDERATION OF TEACHERS,
EAST DETROIT FEDERATION OF
TEACHERS, ECORSE FEDERATION OF
TEACHERS, FAIRVIEW FEDERATION OF
TEACHERS, GLEN LAKE FEDERATION OF
TEACHERS, HALE FEDERATION OF
TEACHERS, HAMTRAMCK FEDERATION OF
TEACHERS, HEMLOCK AUXILIARY

FOR PUBLICATION
October 15, 2020
9:15 a.m.

SERVICE EMPLOYEES, HEMLOCK FEDERATION OF TEACHERS, HENRY FORD COMMUNITY COLLEGE ADJUNCT FACULTY ORGANIZATION, HENRY FORD COMMUNITY COLLEGE FEDERATION OF TEACHERS, HIGHLAND PARK FEDERATION OF PARAPROFESSIONALS, HIGHLAND PARK FEDERATION OF TEACHERS, HURON VALLEY CONTINUING EDUCATION, IMLAY CITY FEDERATION OF TEACHERS, INKSTER FEDERATION OF TEACHERS, IOSCO ISD FEDERATION OF TEACHERS, IOSCO ISD INTERMEDIATE FEDERATION AUXILIARY EMPLOYEES, KINGSLEY FEDERATION OF TEACHERS, KIRTLAND COMMUNITY COLLEGE FEDERATION OF TEACHERS, LAKE CITY SUPPORT STAFF FEDERATION, LAKE CITY TEACHERS & PARAPROFESSIONALS FEDERATION, LAKE SHORE FEDERATION OF ED SECRETARIES, LAKE SHORE FEDERATION OF TEACHERS, LAKE SHORE FEDERATION SUPPORT STAFF, LAMPHERE FEDERATION OF PARAPROFESSIONALS, LAMPHERE FEDERATION OF TEACHERS, LANSING COMMUNITY COLLEGE ADMINISTRATIVE ASSOCIATION, LES CHENEAUX FEDERATION OF SUPPORT STAFF, LES CHENEAUX FEDERATION OF TEACHERS, MACOMB INTERMEDIATE FEDERATION OF PARAPROFESSIONALS, MACOMB INTERMEDIATE FEDERATION OF TEACHERS, MELVINDALE/NAP FEDERATION OF TEACHERS, MELVINDALE/NAP PARAPROFESSIONALS, MIDLAND FEDERATION OF PARAPROFESSIONALS, MIDLAND ISD FEDERATION OF PARAPROFESSIONALS, MIDLAND ISD FEDERATION OF TEACHERS, NORTHVILLE FEDERATION OF PARAPROFESSIONALS, ONAWAY FEDERATION OF SCHOOL RELATED PERSONNEL, ONAWAY FEDERATION OF TEACHERS, PLYMOUTH-CANTON COMMUNITY SCHOOLS SECRETARIAL UNIT, PLYMOUTH-CANTON FEDERATION

OF PLANT ENGINEERS, ROMULUS
FEDERATION OF PARAPROFESSIONALS,
ROSEVILLE FEDERATION OF TEACHERS,
RUDYARD FEDERATION OF AIDES,
RUDYARD FEDERATION OF TEACHERS,
SAGINAW ISD FEDERATION OF TEACHERS,
TAWAS AREA FEDERATION OF TEACHERS,
TAYLOR FEDERATION OF TEACHERS,
UTICA FEDERATION OF TEACHERS, VAN
DYKE EDUCATIONAL ASSISTANTS
FEDERATION, VAN DYKE PROFESSIONAL
PERSONNEL, WARREN WOODS
FEDERATION OF PARAPROFESSIONALS,
WASHTENAW INTERMEDIATE SCHOOL
EMPLOYEES FEDERATION, WATERFORD
ASSOCIATION OF SUPPORT PERSONNEL,
WAYNE COUNTY COMMUNITY COLLEGE
FEDERATION OF TEACHERS, WAYNE
COUNTY COMMUNITY COLLEGE
PROFESSIONAL & ADMINISTRATIVE
ASSOCIATION,  WAYNE COUNTY RESA
SALARIED STAFF, WEXFORD-MISSAUKEE
ISD FEDERATION OF TEACHERS, and
WHITEFISH TOWNSHIP FEDERATION OF
TEACHERS,

        Plaintiffs-Appellees/Cross-
        Appellants,

v                           No.   345036
                            Court of Claims
STATE OF MICHIGAN,               LC No.   10-000091-MM

        Defendant-Appellant/Cross-
        Appellee.

---

DEBORAH MCMILLAN, THOMAS BRENNER,
THERESA DUDLEY, KATHERINE DANIELS,
and COREY CRAMB,

        Plaintiffs-Appellees/Cross-
        Appellants,

v                           No.   345418
                            Court of Claims
PUBLIC SCHOOL EMPLOYEES RETIREMENT   LC No.   10-000045-MM
SYSTEM, PUBLIC SCHOOL EMPLOYEES

RETIREMENT SYSTEM BOARD, TRUST FOR
PUBLIC EMPLOYEE RETIREMENT HEALTH
CARE, and DEPARTMENT OF TECHNOLOGY,
MANAGEMENT, AND BUDGET,

>Defendants-Appellants/Cross-
>Appellees,

and

DIRECTOR OF THE DEPARTMENT OF
TECHNOLOGY, MANAGEMENT, AND
BUDGET,

>Defendant.

---

TIMOTHY L. JOHNSON, JANET HESLET,
RICKY MACK, and DENISE ZIEJA,

>Plaintiffs-Appellees/Cross-
>Appellants,

v

PUBLIC SCHOOL EMPLOYEES RETIREMENT
SYSTEM, PUBLIC SCHOOL EMPLOYEES
RETIREMENT SYSTEM BOARD, TRUST FOR
PUBLIC EMPLOYEE RETIREMENT HEALTH
CARE, and DEPARTMENT OF TECHNOLOGY,
MANAGEMENT, AND BUDGET,

>Defendants-Appellants/Cross-
>Appellees,

and

DIRECTOR OF THE DEPARTMENT OF
TECHNOLOGY, MANAGEMENT, AND
BUDGET, DIRECTOR OF THE OFFICE OF
RETIREMENT SERVICES, and STATE
TREASURER,

>Defendants.

No. 345420
Court of Claims
LC No. 10-000047-MM

---

Before: JANSEN, P.J., and K.F. KELLY and CAMERON, JJ.

CAMERON, J.

In these three cases consolidated for appeal, defendants-appellants ("defendants") appeal and plaintiffs-appellees ("plaintiffs") cross-appeal a July 24, 2018 order of the Court of Claims, which ordered defendants to pay equitable judgment interest on funds collected under MCL 38.1343e, as amended by 2010 PA 75 ("former MCL 38.1343e"). The July 24, 2018 order also denied plaintiffs' request for statutory interest under MCL 600.6455. We affirm in part and reverse in part.

I. BACKGROUND

On May 19, 2010, the Legislature enacted 2010 PA 75, which revised the Public School Employees Retirement Act, MCL 38.1301 *et seq.* In relevant part, Section 43e of 2010 PA 75 required public school employees to contribute three percent of their salaries to the Michigan Public School Employees' Retirement System ("MPSERS"). The funds were to be placed in an irrevocable trust that funded retiree health care benefits.

Plaintiffs brought suits, contesting the constitutionality of 2010 PA 75 on various grounds. In July 2010, the trial court ordered that "[t]he 3% levy from the wages of all members of the [MPSERS] pursuant to 2010 Act 75 shall not be placed in the irrevocable trust . . . ." The trial court instead ordered that the money would be "placed in a separate interest bearing account" and that the money could "not be spent or otherwise disbursed" until further order of the court. Additionally, in September 2010, the trial court entered a stipulated order, which provided as follows:

> Defendants agree that if the final Court to rule in this case finds MCL 38.1343e to be unconstitutional, otherwise illegal, or unenforceable as a result of a breach of contract, Defendant [MPSERS] . . . will repay to each member of MPSERS who contributed under MCL 38.1343e the amount of their individual contribution, plus any interest earned thereon in the separate interest-bearing account.

The trial court ultimately concluded that former MCL 38.1343e was unconstitutional, and appeals followed. On appeal, this Court held that former MCL 38.1343e was unconstitutional under multiple provisions of the Michigan and United States Constitutions. *AFT Mich v Michigan*, 297 Mich App 597; 825 NW2d 595 (2012) (*AFT Mich I*), vacated by 498 Mich 851 (2015). In response to this Court's decision, the Legislature enacted 2012 PA 300, which altered MCL 38.1343e's scope and effect but did not repeal it. All of the plaintiffs challenged 2012 PA 300, and the trial court dismissed their claims. This Court affirmed the trial court's decision in *AFT Mich v Michigan*, 303 Mich App 651; 846 NW2d 583 (2014) (*AFT Mich II*), and the Michigan Supreme Court affirmed this Court's decision regarding 2012 PA 300, *AFT Mich v Michigan*, 497 Mich 197; 866 NW2d 782 (2015) (*AFT Mich III*). However, our Supreme Court vacated this Court's decision in *AFT Mich I* and remanded with instructions for this Court to reconsider its decision in light of the enactment of 2012 PA 300 and in light of the Supreme Court's "decision upholding that Act[.]" *AFT Mich v Michigan*, 498 Mich 851, 851; 864 NW2d 555 (2015).

-5-

On remand, this Court concluded that neither the passage of 2012 PA 300 nor the Michigan Supreme Court's decision to uphold 2012 PA 300 affected the validity of 2010 PA 75. *AFT Mich v Michigan (On Remand)*, 315 Mich App 602; 893 NW2d 90 (2016) (*AFT Mich IV*), vacated in part by 501 Mich 939 (2017). This Court concluded that 2010 PA 75 and its compulsory contribution provision remained unconstitutional for several reasons. *Id*. at 611-612. In relevant part, in Section II of the opinion, this Court held that "2010 PA 75 , from its effective date until the completed transition to a voluntary system, violated" the Contracts Clauses of the United States and Michigan Constitutions. *Id*. at 621. This Court remanded the case to the trial court "with the direction to return the subject funds, with interest, to the relevant employees." *Id*. at 612.

Our Supreme Court affirmed this Court's "holding that 2010 Public Act 75 violated the respective Contract Clauses of both the federal and state constitutions . . . ." *AFT Mich v Michigan*, 501 Mich 939, 939; 904 NW2d 417 (2017) (*AFT Mich V*). Our Supreme Court additionally held that, "[b]ecause 2010 Public Act 75 is unconstitutional, the funds collected pursuant to that act before the effective date of 2012 Public Act 300 must be refunded to the plaintiffs in accordance with the Court of Appeals judgment." *Id*.

On January 22, 2018, the trial court entered an order, noting that it had been directed to order the "return of the subject funds, with interest, to the relevant employees." The trial court ordered defendants to disburse the funds "together with the interest earned on the amounts in the interest-bearing account." Defendants complied with the trial court's order.

In February 2018, plaintiffs filed a joint motion seeking the payment of interest under MCL 600.6455. Plaintiffs argued that they had obtained a money judgment and that this Court had ordered the trial court to return the funds "with interest." Plaintiffs argued that, because the interest on the money held in escrow was "less than one percent of the principal in total," they would not be made whole if the trial court did not order defendants to pay statutory interest. In the alternative, plaintiffs moved the trial court to award interest as a matter of equity. Plaintiffs argued that, absent defendants' unconstitutional actions, plaintiffs would have received full payment for their earned compensation. Plaintiffs argued that they should be compensated "in *today's dollars* for the compensation which they should have been receiving between 2010 and 2012." Defendants opposed the motion, arguing that plaintiffs had waived any additional interest award under contract principles and that defendants were not required to pay interest under MCL 600.6455 because the case resulted in a declaratory judgment, not a money judgment. Defendants also argued that governmental immunity barred payment of equitable interest and that, based on the circumstances, plaintiffs were not entitled to an award of equitable interest.

The trial court rejected defendants' argument that plaintiffs had waived entitlement to interest. The trial court then concluded that an order to return the involuntarily withheld funds was not a "money judgment" within the meaning of MCL 600.6422(2) because the order merely restored property to plaintiffs, and because the order was for equitable relief resulting from a declaratory judgment. The trial court also disagreed that governmental immunity or sovereign immunity barred an interest award outside of interest on a money judgment under MCL 600.6455. The trial court reasoned that governmental immunity was not available in the underlying action because it was not a tort action. Additionally, the trial court noted that common law sovereign immunity had been replaced by governmental immunity under the governmental tort liability act

("GTLA"), MCL 691.1401 *et seq.*, and that an award of equitable interest was not a tort subject to the GTLA.

Finally, the trial court held that an award of equitable interest was warranted. The court noted that in equitable actions, it had discretion to award judgment interest even if interest was not mandated by statute. When considering the totality of the circumstances, the trial court declined to "punish" plaintiffs for prudently obtaining injunctive relief. The trial court found that defendants "played no small role in the protracted nature of the appellate process . . . ." While the fact that *AFT Mich I* was pending on application for nearly two years contributed to the delay, the trial court noted that defendants had sought leave to appeal after the Attorney General decided to no longer pursue the matter. The trial court also considered that plaintiffs were deprived of use of their taken wages for nearly seven years. The trial court determined that the proper rate of interest was the same rate that MCL 600.6455(2) provided for interest on a money judgment, less the amount of interest the escrow account had actually earned. These appeals followed.

## II. ANALYSIS

### A. LAW-OF-THE-CASE DOCTRINE

Defendants first argue that plaintiffs' claims should be dismissed because plaintiffs failed to comply with the requirements of MCL 600.6431. Although defendants are correct that "a claim cannot proceed against the state" unless a claimant complies with the mandates outlined in MCL 600.6431, *Fairley v Dep't of Corrections*, 497 Mich 290, 293; 871 NW2d 129 (2015), we conclude that the law-of-the-case doctrine precludes consideration of this issue.

The law-of-the-case doctrine provides that once "an appellate court has passed on a legal question and remanded the case for further proceedings, the legal questions . . . determined by the appellate court will not be differently determined on a subsequent appeal in the same case where the facts remain materially the same." See *Grievance Administrator v Lopatin*, 462 Mich 235, 259; 612 NW2d 120 (2000) (quotation marks and citation omitted). "[A]s a general rule, an appellate court's determination of an issue in a case binds lower tribunals on remand and the appellate court in subsequent appeals." *Id*. at 260.

The purpose of the doctrine is to promote consistency and to "avoid reconsideration of matters once decided during the course of a single lawsuit." See *Schumacher v Dep't of Natural Resources*, 275 Mich App 121, 128; 737 NW2d 782 (2007). The doctrine promotes finality and prevents forum shopping as well. See *Int'l Union, UAW v Dep't of Mental Health*, 211 Mich App 20, 24; 535 NW2d 210 (1995). The doctrine is also founded on an appellate court's lack of jurisdiction to modify its own judgments except on rehearing. See *Johnson v White*, 430 Mich 47, 53; 420 NW2d 87 (1988). The law-of-the-case doctrine is, in a sense, the "analytical cousin of the doctrines of claim and issue preclusion." *Locricchio v The Evening News Ass'n*, 438 Mich 84, 109; 476 NW2d 112 (1991). However, the law-of-the case doctrine applies "only to issues actually decided, either implicitly or explicitly, in the prior appeal." *Lopatin*, 462 Mich at 260. An issue is decided if this court expresses an opinion on the merits. See *id*. (ruling that the doctrine did not apply because the court had not addressed the issue on the merits).

In this case, both this Court and the Michigan Supreme Court have expressed opinions on the merits of plaintiffs' claims. Specifically, this Court previously held that former MCL 38.1343e violated the Contracts Clauses of the United States and Michigan Constitutions. *AFT Mich IV*, 315 Mich App at 621. As a result of this holding, this Court ordered return of plaintiffs' funds. *Id*. at 628. The Michigan Supreme Court also ruled that former MCL 38.1343e violated the Contracts Clauses and ordered return of the funds. *AFT Mich V*, 501 Mich at 939. By ruling that plaintiffs were entitled to their wrongly taken wages, both this Court and the Michigan Supreme Court implicitly decided that plaintiffs had a cause of action. Furthermore, when a higher court has remanded a case, it is the duty of the lower court to comply with the remand order. *Rodriguez v Gen Motors Corp*, 204 Mich App 509, 514; 516 NW2d 105 (1994). The trial court was ordered to distribute the funds, *AFT Mich IV*, 315 Mich App at 628; *AFT Mich V*, 501 Mich at 939, and it was required to do so. Therefore, we decline to decide whether plaintiffs' claims were barred by virtue of their alleged failure to verify their respective complaints.

## B. STATUTORY INTEREST

Plaintiffs argue that the trial court erred by ruling that the January 2018 order was not a money judgment. We disagree.

This Court reviews de novo whether a statute applies in a given case. *In re Forfeiture of $176,598*, 465 Mich 382, 385; 633 NW2d 367 (2001). Generally, "[e]ntitlement to interest on a judgment is purely statutory and must be specifically authorized by statute." *Dep't of Transp v Schultz*, 201 Mich App 605, 610; 506 NW2d 904 (1993). "[A]n award of interest is mandatory in all cases to which [a] statute applies." *Everett v Nickola*, 234 Mich App 632, 639; 599 NW2d 732 (1999).

Plaintiffs argue that interest must be awarded on the wrongfully withheld funds under MCL 600.6455(2) of the Court of Claims Act, which provides as follows:

> Except as otherwise provided in this subsection, for complaints filed on or after January 1, 1987, interest *on a money judgment* recovered in a civil action shall be calculated from the date of filing the complaint at a rate of interest which is equal to 1% plus the average interest rate paid at auctions of 5-year United States treasury notes during the 6 months immediately preceding July 1 and January 1, as certified by the state treasurer, and compounded annually, pursuant to this section. [Emphasis added.]

As noted by the trial court and acknowledged by the parties, the key phrase in MCL 600.6455(2) is "on a money judgment." Plaintiffs argue that because the crux of this case involved the payment of money, it necessary involved a "money judgment." We disagree.

The phrase "money judgment" is not defined in the Court of Claims Act, and the case law interpreting MCL 600.5455(2) is limited. However, like MCL 600.5455(2), MCL 600.6013(1) "applies to money judgments recovered in a civil action." *Olson v Olson*, 273 Mich App 347, 350; 729 NW2d 908 (2006). The meaning of "money judgment" within MCL 600.6013(1) has been interpreted by Michigan Courts. When engaging in statutory interpretation, "the statute must be read as a whole," and this Court should read phrases "in the context of the entire legislative

scheme." *Mich Props, LLC v Meridian Twp*, 491 Mich 518, 528; 817 NW2d 548 (2012). This Court also reads subsections of cohesive statutory provisions together. *Robinson v Lansing*, 486 Mich 1, 15; 782 NW2d 171 (2010). Because both MCL 600.6013 and MCL 600.6455 are part of the Revised Judicature Act, MCL 600.101 *et seq*., and because both provisions refer to money judgments in civil actions, we will construe the meaning of money judgment in a civil action the same in MCL 600.6455(2) as in MCL 600.6013(1).

Case law interpreting the phrase "money judgment" within MCL 600.6013(1) makes it clear that a judgment is not a money judgment simply because money is granted as part of that judgment. Under MCL 600.6013(1), a money judgment in a civil action is a judgment "that orders the payment of a sum of money, as distinguished from an order directing an act to be done or property to be restored or transferred." *In re Forfeiture*, 465 Mich at 386.

In *In re Forfeiture*, the police seized $176,598 from the claimant's home and from another residence based on the suspicion that the money was related to drug trafficking. *Id*. at 383-384. The claimant ultimately prevailed in a forfeiture action that was brought by the prosecutor. *Id*. at 384. Thereafter, the claimant brought a motion in the trial court, requesting return of the money and statutory judgment interest under MCL 600.6013. *Id*. The trial court ordered the prosecutor to return the money to the claimant, but the trial court denied the request for statutory interest. *Id*. at 385. This Court reversed on appeal. *Id*. In doing so, this Court held "that the decree directing return of the funds was a money judgment in a civil action," which entitled the claimant to interest under MCL 600.6013(1). *Id*.

In affirming the trial court's denial of statutory interest under MCL 600.6013, our Supreme Court concluded that the order directing the return of the seized funds to the claimant was not a money judgment in a civil action. *Id*. at 389. Our Supreme Court observed that "[t]he trial court's order was not an adjudication of an action for money damages, but rather one for the delivery of property that had been the subject of a forfeiture action." *Id*. at 388. The Court reasoned that money is "property" subject to forfeiture, and that the trial court simply ordered the return of specific personal property. *Id*. at 386-387. It noted that wrongfully seized currency is generally treated like any other wrongfully seized property. *Id*. at 386 n 10. Specifically, our Supreme Court reasoned that "[t]he return of seized property is treated as an act of *restoration*, rather than as an award of monetary compensation for damages suffered by a party." *Id*.

We conclude that the January 2018 order at issue in this case ordered the return of specific personal property, not an award of monetary compensation for damages. As already discussed, defendants took money from plaintiffs' paychecks, and that specific money was ordered to be placed into an account. This Court ordered that the money be "return[ed] . . . to the relevant employees," *AFT Mich IV*, 315 Mich App at 612, and our Supreme Court ordered that the funds collected "must be refunded to the plaintiffs," *AFT Mich V*, 501 Mich at 939. Consistent with these holdings, the trial court ordered as follows:

> The funds currently held in the separate interest-bearing accounts will be dispersed by Defendants on January 22, 2018 to the reporting units, or Local Education Agencies (LEAs), from which the funds were received, together with the interest earned on the amounts in the interest-bearing account.

Accordingly, the January 2018 order did not order the payment of a sum of money. Rather, the order directed an act to be done, i.e., that plaintiffs' property be transferred "to the reporting units" or LEAs "from which the funds were received[.]" Thus, like in *In re Forfeiture*, the order represented the return of specific property that defendants wrongfully took from plaintiffs. Because a money judgment was not entered, the trial court properly declined to award statutory interest to plaintiffs under MCL 600.5455(2).

## C. EQUITABLE INTEREST

Defendants argue that the trial court erred by awarding plaintiffs equitable interest. Specifically, defendants argue that plaintiffs' request for compensation for their loss of use of the money taken by defendants was a claim for common law damages to which defendants have not waived immunity.[1] We agree.

From the time of Michigan's statehood, our Supreme Court's jurisprudence has recognized that the state, as sovereign, is immune from suit unless it consents to the lawsuit. *Manion v State Hwy Comm'r*, 303 Mich 1, 19; 5 NW2d 527 (1942). See also *Odom v Wayne Co*, 482 Mich 459, 477; 760 NW2d 217 (2008). Thus, "a governmental agency is immune unless the Legislature has pulled back the veil of immunity and allowed suit by citizens against the government." *Mack v City of Detroit*, 467 Mich 186, 195; 649 NW2d 47 (2002). Tort immunity is granted to governmental agencies in MCL 691.1407(1), which provides: "Except as otherwise provided in this act, a governmental agency is immune from tort liability if the governmental agency is engaged in the exercise or discharge of a governmental function." Thus, "[i]mmunity from tort liability, as provided by MCL 691.1407, is expressed in the broadest possible language—it extends immunity to all governmental agencies for all tort liability whenever they are engaged in the exercise or discharge of a governmental function." *Nawrocki v Macomb Co Rd Comm*, 463 Mich 143, 156; 615 NW2d 702 (2000). However, the GTLA also provides several exceptions to this broad grant of immunity, *Wesche v Mecosta Co Rd Comm*, 480 Mich 75, 84; 746 NW2d 847 (2008), none of which pertain to a claim for damages arising from the violation of a constitutional right.

"The Legislature has never created an exception to immunity for a constitutional tort." *Mays v Governor*, ___Mich ___, ___; ___ NW2d ___ (2020) (Docket No. 157335); slip op at 23. Nonetheless, in *Smith v Dep't of Public Health*, 428 Mich 540, 544; 410 NW2d 749 (1987), our Supreme Court held that "[a] claim for damages against the state arising from violation by the state of the Michigan Constitution may be recognized in appropriate cases." However, as recently recognized by our Supreme Court in *Mays*, ___ Mich at ___, slip op at 31:

> This Court has never explicitly endorsed a test for assessing a damages inquiry for a constitutional violation. However, we agree with the Court of Claims

---

[1] We note that defendants argue that "sovereign immunity" bars plaintiffs' claims. However, Michigan has abrogated common law sovereign immunity. *Pittman v City of Taylor*, 398 Mich 41, 49; 247 NW2d 512 (1976). Furthermore, our Supreme Court has explained that while the terms "sovereign immunity" and "governmental immunity" have been used interchangeably over the years, the terms are not synonymous. *Pohutski v City of Allen Park*, 465 Mich 675, 682; 641 NW2d 219 (2002).

-10-

and the Court of Appeals that the multifactor test elaborated in Justice BOYLE'S separate opinion in *Smith* provides a framework for assessing the damages inquiry. Under that test, we weigh various factors, including (1) the existence and clarity of the constitutional violation itself; (2) the degree of specificity of the constitutional protection; (3) support for the propriety of a judicially inferred damages remedy in any text, history, and previous interpretations of the specific provision; (4) the availability of another remedy; and (5) various other facts militating for or against a judicially inferred damages remedy. See *Smith*, 428 Mich at 648-652 (BOYLE, J., concurring in part and dissenting in part).

As to the first factor, as already discussed in detail, this Court and our Supreme Court have determined that plaintiffs have established a clear violation of the Contracts Clauses of the United States and Michigan Constitutions. See *AFT Mich IV*, 315 Mich App at 621; *AFT Mich V*, 501 Mich at 939. Thus, this factor weighs in favor of a judicially inferred damages remedy.

With respect to the second and third factors, US Const, art I, § 10 and Const 1963, art 1, § 10 both prohibit the enactment of a statute that impairs a contract, and the two provisions are interpreted similarly. *In re Certified Question*, 447 Mich 765, 776-777; 527 NW2d 468 (1994). However, "[n]ot every constitutional violation merits damages." *Mays*, ___ Mich at ___, slip op at 31. Importantly, the federal Contracts Clause has not historically provided a damages remedy. See *Carter v Greenhow*, 114 US 317, 322; 5 S Ct 928, 29 L Ed 202 (1885). Rather, the United States Supreme Court has held that a plaintiff who asserts that a state law violated the Contracts Clause has only "a right to have a judicial determination declaring the nullity of the attempt to impair its obligation. This is the only right secured to him by that clause of the constitution." *Id*. Thus, the remedy available for a Contracts Clause violation is generally declaratory or injunctive relief. See *id*. We therefore conclude that the second and third factors weigh against recognition of a damages remedy.

With respect to the fourth factor, "[t]he existence of alternative remedies is given considerable weight, but it is not dispositive." *Mays*, ___ Mich at ___, slip op at 33 (citation omitted). Importantly, in this case, plaintiffs clearly enjoyed an alternative remedy in that they were able to bring equitable claims. Not only were plaintiffs able to bring equitable claims, they also recovered on these claims. As already discussed in depth, plaintiffs' remedy in this case specifically included the distribution of the balance of an escrow account. See *AFT Mich IV*, 315 Mich App at 628; *AFT Mich V*, 501 Mich at 939. Thus, this factor weighs against recognition of a damages remedy. Finally, as to the fifth factor, which requires us to assess all other relevant considerations, we can discern no other relevant circumstances that would support a conclusion that damages should be inferred for a Contracts Clause violation. Indeed, as already stated, the federal Contracts Clause has not historically provided a damages remedy and equitable relief was available to plaintiffs. On the basis of these factors, we conclude that it is unwarranted to conclude that damages should be inferred for a Contracts Clause violation.

Because money damages are not available to plaintiffs for the constitutional tort, we must next consider whether the equitable interest awarded in this case amounted to an award of damages. We find it helpful to first consider the meaning of the word "interest." Various definitions of the term "interest" make reference to its relationship to the use of money. The United States Supreme Court stated in *Deputy v Du Pont*, 308 US 488, 497-498; 60 S Ct 363; 84 L Ed 2d 416 (1940), that the "usual import of the term" "interest" "is the amount which one has contracted to pay for the use of borrowed money," and added that "interest on indebtedness means compensation for the use or forbearance of money" (quotations and citation omitted). "Interest" has also been defined as "the compensation allowed by law, or fixed by the parties, for the use or forbearance of money, or as damages for its detention." *Marion v City of Detroit*, 284 Mich 476, 484; 280 NW 26 (1938) (quotations and citation omitted). Additionally, in *Balch v Detroit Trust Co*, 312 Mich 146, 152; 20 NW2d 138 (1945), our Supreme Court stated that "interest" "is paid for the use of money . . . or given for the delay in the payment of money" (quotation marks and citations omitted).

A reference to dictionary definitions supports the same basic definitions. *Merriam-Webster's Collegiate Dictionary* (11th ed) defines "interest" as "a charge for borrowed money generally a percentage of the amount borrowed." *Random House Webster's College Dictionary* (1997) defines "interest" as "a sum paid or charged for the use of money or for borrowing money" or "such a sum expressed as a percentage of the amount borrowed to be paid over a given period[.]" Thus, interest is compensation for the use of another's money.

Importantly,

> Michigan has long recognized the common-law doctrine of awarding interest as an element of damages. The doctrine recognizes that money has a "use value" and interest is a legitimate element of damages used to compensate the prevailing party for the lost use of its funds. Furthermore, the decision whether to award interest as an element of damages is not dependent upon a contractual promise to pay interest . . . . [T]he pivotal factor in awarding such interest is whether it is necessary to allow full compensation. [*Gordon Sel-Way, Inc v Spence Bros, Inc*, 438 Mich 488, 499; 475 NW2d 704 (1991) (citations omitted).]

Accordingly, in Michigan, the purpose of common law interest is to compensate plaintiffs for loss of use of their funds and to "allow full compensation." *Id*. Indeed, Courts have long recognized equitable prejudgment interest as "an element of [a litigant's] complete compensation." *Osterneck v Ernst & Whinney*, 489 US 169, 175; 109 S Ct 987; 103 L Ed 2d 146 (1989) (quotation marks and citation omitted; alteration added). "Prejudgment interest is normally designed to make the plaintiff whole and is part of the actual damages sought to be recovered." *Monessen Southwestern R Co v Morgan*, 486 US 330, 335; 108 S Ct 1837; 100 L Ed 2d 349 (1988). See also *Library of Congress v Shaw*, 478 US 310, 321; 106 S Ct 2957; 92 L Ed 2d 250 (1986) (adopting the view that "[p]rejudgment interest . . . is considered as damages, not a component of 'costs' ") (citation omitted); *General Motors Corp v Devex Corp*, 461 US 648, 655-656 n 10; 103 S Ct 2058 2058; 76 L Ed 2d 211 (1983) ("prejudgment interest represents 'delay damages' and should be awarded as a component of full compensation"); *Miller v Robertson*, 266 US 243, 258; 45 S Ct

73; 69 L Ed 265 (1924) ("in order to arrive at fair compensation, the court in the exercise of a sound discretion may include interest or its equivalent as an element of damages").

In this case, plaintiffs sought interest in order to be fully compensated for their losses, i.e., the deprivation of the benefit of possessing and using the funds during the years prior to judgment. Plaintiffs claimed that, because the interest on the money held in escrow was "less than one percent of the principal in total," they would not be made whole if the trial court did not order defendants to pay interest. When determining that it was proper to award equitable interest, the trial court noted that plaintiffs "were deprived of the use of the funds." The trial court also noted that defendants' taking of a portion of plaintiffs' wages hindered "plaintiffs' respective abilities to provide for and 'meet the daily necessities of life.' " Based in part on these facts, the trial court found that it was proper to award interest and applied MCL 600.6455(2) in order to calculate the amount of interest owed to plaintiffs. Thus, the interest awarded in this case was a compensatory damage in that it compensated plaintiffs for the delay and expense that resulted from the loss of use of their property. Consequently, the trial court erred by awarding equitable interest.

Finally, plaintiffs in Docket No. 345418 argue that they are entitled to interest beyond that of the interest earned in the interest-bearing account because this Court and the Michigan Supreme Court specifically ordered that the funds be returned "with interest." We disagree.

Courts should interpret the terms in a judgment in the same manner as courts interpret contracts. *Smith v Smith*, 278 Mich App 198, 200; 748 NW2d 258 (2008). We construe contractual terms in context, *Henderson v State Farm Fire & Cas Co*, 460 Mich 348, 356-357; 596 NW2d 190 (1999), and this Court generally construes together agreements that are related to the same subject matter, *Culver v Castro*, 126 Mich App 824, 826; 338 NW2d 232 (1983). Courts should not read language into contracts, *In re Smith Trust*, 274 Mich App 283, 288-289; 731 NW2d 810 (2007), or rewrite clear contractual language, *DeFrain v State Farm Mut Auto Ins Co*, 491 Mich 359, 372; 817 NW2d 504 (2012).

In this case, the trial court ordered that the money was to be "placed in a separate interest bearing account," and not spent or disbursed until further order of the court. Additionally, the September 2010 stipulated order provided that if it was determined that former MCL 38.1343e was unconstitutional or unenforceable, defendants would "repay to each member of MPSERS who contributed under MCL 38.1343e the amount of their individual contribution, plus any interest earned thereon in the separate interest-bearing account." In *AFT Mich IV*, 315 Mich App at 628, this Court ordered that the trial court "shall direct the return of the subject funds, with interest, to the relevant employees." The Michigan Supreme Court ordered that the funds be refunded to plaintiffs in accordance with this Court's judgment. *AFT Mich V*, 501 Mich at 939. Construing the judgments together, like this Court would construe contracts together, we conclude that this Court's reference to interest means the interest from the interest-bearing account, not some other form of interest. Indeed, had this Court wished to order the payment of judgment interest, it would

have done so.  Consequently, we decline to read the word "judgment" before the word "interest" in this Court's previous order.[2]

       We affirm in part and reverse in part.  We do not retain jurisdiction.


                                   /s/ Thomas C. Cameron
                                   /s/ Kathleen Jansen
                                   /s/ Kirsten Frank Kelly

---

[2] Based on this holding, the remainder of the parties' arguments on appeal are rendered moot and need not be considered.  See *Attorney Gen v Pub Serv Comm*, 269 Mich App 473, 485; 713 NW2d 290 (2005).