ATTORNEY GENERAL v PUBLIC SERVICE COMMISSION

Docket Nos. 256180, 261028, 263063. Submitted November 8, 2005, at Lansing. Decided November 22, 2005. Approved for publication January 19, 2006, at 9:05 a.m. Leave to appeal sought.

The Public Service Commission, as required by the customer Choice and Electricity Reliability Act (CCERA), MCL 460.10 *et seq.*, established a renewable energy program by adopting a proposal submitted by its staff and modified by the PSC after it received public comment on the proposal. Consumers Energy Company submitted, and the PSC approved, a proposal for a "green power" pilot program to be offered to all of its electric customers. Mackinaw Power, L.L.C. (Mackinaw); and North American Wind Energy, L.L.C. (NAWE), filed an application in the PSC seeking to amend and make permanent Consumers' pilot program. The PSC granted in part and denied in part the application of Mackinaw and NAWE, determining that circumstances did not require the revision or replacement of Consumers' pilot program, but that it had authority under the CCERA to require Consumers to offer an additional renewable energy program. The PSC approved the use of long-term contracts between Consumers and its suppliers, granted Mackinaw and NAWE the exclusive right to develop new wind power projects, and determined that Consumers should be authorized to levy a charge of $0.05 a meter each month on all customer meters, including those of customers who did not utilize its renewable energy program, so that Consumers can recover costs not covered by customers who pay premium rates under the renewable energy program. The PSC directed Consumers to file an application for a new renewable energy program. Consumers filed such an application, and the PSC solicited and received comments from interested parties, but did not conduct a hearing. The PSC issued an order directing Consumers to file an application seeking approval of its proposed renewable energy program tariff. The Attorney General filed three appeals challenging (1) the PSC's authority to empower Consumers to impose the additional charge of $0.05 a meter each month on all of Consumers' electric customers, (2) the PSC's failure to conduct a hearing before issuing the order directing Consumers to file an application for approval of the renewable energy program tariff, (3) the lawfulness of the PSC order directing Consumers to extend its contracts with suppliers, (4) the

PSC's authority to require Consumers to purchase a minimum percentage of electricity supplies from renewable energy suppliers, and (5) the PSC's authority to issue ex parte the order approving Consumers' tariff. The appeals were consolidated.

The Court of Appeals *held*:

1. Only that portion of the PSC order allowing Consumers to place a surcharge on each meter each month on every customers' bill is unlawful. The PSC lacks the statutory authority to authorize the levy on all customers, including those who had not chosen to pay a premium to receive electricity from a green power producer. Neither MCL 460.10b(1) nor MCL 460.10r(6) specifically authorizes the PSC to enable a utility to compel customers to pay to support a voluntary renewable resource energy program where they have not chosen to receive power from the program. The PSC must operate within its statutory authority, which allows for a wide variety of factors when setting rates, but is not unlimited. The Legislature clearly intended consumer participation in green power programs to be voluntary.

2. The issuance of PSC orders without additional hearings did not violate MCL 462.24, which, in general, requires that notice and an opportunity to be heard be provided. The orders were not the result of a complaint that, under MCL 462.22, would require notice and an opportunity to be heard in a contested hearing. The January 25, 2005, order logically followed the May 18, 2004, order, and merely approved the proposal for a new renewable energy program required by the earlier order and directed Consumers to submit an application seeking approval of a tariff for the new program. The requirements of MCL 462.24 and 462.22 were similarly not applicable to the April 28, 2005, approval of the proposed tariff for the new renewable energy program. The decision that no hearings were needed was a reasonable interpretation of the regulatory scheme that the PSC is empowered to administer, and the PSC's decision is entitled to deference.

3. The issue regarding the ordered extension of Consumers' contracts with its suppliers is moot.

4. The Attorney General claimed that the PSC exceeded its authority by ordering Consumers to purchase a minimum percentage of its electric power supply from suppliers of renewable energy, but pointed to no language in the PSC orders supporting that assertion. The issue is deemed abandoned on appeal.

5. For the same reasons that the PSC did not violate MCL 462.24 in not holding further hearings, the PSC did not violate the statute in issuing the tariff approval order ex parte.

Affirmed in part and reversed in part.

PUBLIC UTILITIES — PUBLIC SERVICE COMMISSION — CONSUMER CHOICE AND ELECTRICITY RELIABILITY ACT — VOLUNTARY PARTICIPATION.

The PSC may not approve a tariff that enables an electric utility to compel all of its customers to pay to support a voluntary renewable energy program where those customers have not chosen to participate in the program; in approving the Consumer Choice and Electricity Reliability Act, MCL 460.10 *et seq.*, the Legislature clearly intended consumer participation in renewable energy programs to be voluntary.

*Michael A. Cox*, Attorney General, and *Susan I. Leffler* and *Donald E. Erickson*, Assistant Attorneys General, for the Attorney General.

*Butzel Long* (by *Max R. Hoffman, Jr.*, and *Debra A. Geroux*, Special Assistant Attorneys General) for the Public Service Commission.

*Jon R. Robinson* and *John C. Shea* for Consumers Energy Company.

*Richard F. Vander Veen, III*, for Mackinaw Power, L.L.C.

*Robert C. Evans* for North American Wind Energy, L.L.C.

Before: DONOFRIO, P.J., and ZAHRA and KELLY, JJ.

PER CURIAM. In these consolidated cases, appellant Attorney General appeals as of right orders entered on May 18, 2004, January 25, 2005, and April 28, 2005, by appellee Michigan Public Service Commission (PSC) granting in part and denying in part an application filed by appellees Mackinaw Power, L.L.C. (Mackinaw), and

North American Wind Energy, L.L.C. (NAWE), approving a renewable resource program proposed by appellee Consumers Energy Company (CEC), and approving CEC's proposed tariff. We affirm in part and reverse in part.

### I. UNDERLYING FACTS AND PROCEEDINGS

On June 5, 2000, 2000 PA 141, the Customer Choice and Electricity Reliability Act (CCERA), MCL 460.10 *et seq.*, became effective. The Legislature enacted the CCERA as part of its decision to deregulate the electric utility industry in Michigan. *Attorney General v Pub Service Comm*, 249 Mich App 424, 426; 642 NW2d 691 (2002). The stated purposes of the CCERA included: (a) ensuring that retail electric power customers have a choice of electric suppliers, (b) allowing the PSC to foster competition in the provision of electric supply and to maintain regulation of that supply, (c) encouraging the diversification of ownership of electric supply, (d) ensuring that all persons in Michigan are provided reliable electric power at affordable rates, and (e) improving opportunities for economic development in the state and promoting competitive and financially healthy utilities. MCL 460.10(2).

The CCERA required the PSC to establish a renewable energy program. MCL 460.10r(6) provided:

> The commission shall establish the Michigan renewables [sic] energy program. The program shall be designed to inform customers in this state of the availability and value of using renewable energy generation and the potential of reduced pollution. The program shall also be designed to promote the use of existing renewable energy sources and encourage the development of new facilities.[1]

---

[1] " 'Renewable energy source' means energy generated by solar, wind, geothermal, biomass, including waste-to-energy and landfill gas, or hydroelectric." MCL 460.10g(1)(f).

The PSC staff submitted a proposal for implementation of the Michigan Renewables Energy Program. The matter was docketed as Case No. U-12915. The PSC accepted public comments regarding the staff's proposal and subsequently modified and accepted the proposal.

CEC filed an application in Case No. U-13029 for authority to establish a voluntary program designed to encourage the use of renewable energy sources. CEC proposed a "green power" pilot program to encourage the development of new, zero-emissions renewable energy resources in Michigan. The program was to be limited to 50 megavolt-amperes of electric capacity generated through the use of wind, solar rays, or other renewable energy resources, and was to be available to all CEC residential, commercial, and industrial customers. The PSC approved CEC's application.

Mackinaw and NAWE filed an application in Case No. U-13843 seeking to amend and make permanent CEC's renewable energy program approved in Case No. U-13029. Mackinaw and NAWE requested that the PSC create a permanent green power program with long-term, firm-priced energy purchase agreements, sought to have the PSC encourage CEC to offer tariffs that would allow customers to commit to the purchase of green power on a long-term basis, and recommended that the PSC ensure that, if CEC's green power program incurred costs that exceeded its revenues, those costs could be recovered in a nonbypassable surcharge paid by all customers that used CEC's distribution system and whose rates could be surcharged.

In its order of May 18, 2004, the PSC granted in part and denied in part the application filed by Mackinaw and NAWE. The PSC found that while circumstances did not require that it revise or replace CEC's existing

zero-emissions program, it should take further steps to promote renewable resources, as required by MCL 460.10r(6). The PSC concluded that it had the authority pursuant to MCL 460.10b(1) and MCL 460.10r(6) to require CEC to offer an additional renewable energy program, and approved the use of long-term contracts of up to 20 years between CEC and its suppliers. The PSC directed CEC to file an application to implement a new renewable resource program. Mackinaw and NAWE were granted the exclusive right to develop new wind power projects up to the limits set forth in their existing projects. The PSC found that CEC should be authorized to implement a funding mechanism to recover green power program costs not covered by the contributions of customers who agreed to pay premium rates for green power, and authorized CEC to levy a charge of $0.05 a meter each month on all customer meters, including those of customers who did not utilize green power. The funds collected from that charge were to be placed into a renewable resource program fund, and would be used to compensate CEC for costs not covered by premiums paid by green power customers. This funding mechanism was to operate without affecting CEC's power supply cost recovery costs.

In accordance with the PSC's order of May 18, 2004, CEC filed an application in Case No. U-13843 for implementation of a new renewable resource program. The PSC solicited and received comments from interested parties, but did not hold a further evidentiary hearing on CEC's proposed new program. In its order of January 25, 2005, the PSC considered CEC's proposed new program, concluded that a further evidentiary hearing was unnecessary, and directed CEC to file an application seeking approval of its proposed renewable resource program tariff.

In accordance with the PSC's order of January 25, 2005, CEC filed an amended renewable resource program tariff. In its order of April 28, 2005, the PSC granted ex parte approval of the tariff, but denied as premature CEC's request to recover various administrative costs.

The Attorney General claimed appeals from the PSC's orders of May 18, 2004 (Docket No. 256180), January 25, 2005 (Docket No. 261028), and April 28, 2005 (Docket No. 263063). We consolidated the appeals for the purposes of hearing and decision.

## II. STANDARD OF REVIEW

The standard of review for PSC orders is narrow and well-defined. Pursuant to MCL 462.25, all rates, fares, charges, classification and joint rates, regulations, practices, and services prescribed by the PSC are presumed, prima facie, to be lawful and reasonable. *Michigan Consolidated Gas Co v Pub Service Comm*, 389 Mich 624, 635-636; 209 NW2d 210 (1973). A party allegedly aggrieved by an order of the PSC has the burden of proving by clear and satisfactory evidence that the order is unlawful or unreasonable. MCL 462.26(8). To establish that a PSC order is unlawful, the appellant must show that the PSC failed to follow a mandatory statute or abused its discretion in the exercise of its judgment. *In re MCI Telecom Complaint*, 460 Mich 396, 427; 596 NW2d 164 (1999). An order is unreasonable if it is arbitrary, capricious, or not totally supported by the evidence. *Associated Truck Lines, Inc v Pub Service Comm*, 377 Mich 259, 279; 140 NW2d 515 (1966) (dissenting opinion by O'HARA, J.).

A final order of the PSC must be authorized by law and supported by competent, material, and substantial evidence on the whole record. Const 1963, art 6, § 28;

*Attorney General v Pub Service Comm*, 165 Mich App 230, 235; 418 NW2d 660 (1987).

We defer to the PSC's administrative expertise, and will not substitute our judgment for that of the PSC. *Attorney General v Pub Service Comm No 2*, 237 Mich App 82, 88; 602 NW2d 225 (1999). We give great weight to any reasonable construction of a regulatory scheme that the PSC is empowered to administer, *Champion's Auto Ferry, Inc v Pub Service Comm*, 231 Mich App 699, 707-708; 588 NW2d 153 (1998), but we may not abandon our responsibility to interpret statutory language and legislative intent, *Miller Bros v Pub Service Comm*, 180 Mich App 227, 232; 446 NW2d 640 (1989). We do not afford the same measure of deference to an agency's initial interpretation of new legislation as we do to a longstanding interpretation. *In re Procedure & Format for Filing Tariffs Under the Michigan Telecom Act*, 210 Mich App 533, 538-539; 534 NW2d 194 (1995). "Whether the PSC exceeded the scope of its authority is a question of law that we review de novo." *In re Complaint of Pelland Against Ameritech Michigan*, 254 Mich App 675, 682; 658 NW2d 849 (2003).

The PSC possesses only that authority granted to it by the Legislature. Authority must be granted by clear and unmistakable language. A doubtful power does not exist. *Attorney General v Pub Service Comm*, 231 Mich App 76, 78; 585 NW2d 310 (1998).

### III. ANALYSIS

#### A. STATUTORY AUTHORITY TO AUTHORIZE SURCHARGE

Appellant argues that the PSC lacked the statutory authority to empower CEC to require customers who had not voluntarily agreed to pay a premium for green power to pay an additional charge of $0.05 a meter each

month to subsidize the cost of green power projects. Neither MCL 460.10b(1) nor MCL 460.10r(6) contains clear and unambiguous language authorizing the PSC to allow a utility to impose a charge on a customer for a program not utilized by that customer. Furthermore, appellant notes that MCL 460.6d(1) provides that the owner of a renewable resource power production facility is not subject to regulation by the PSC if, before the construction of the renewable resource power facility, the owner was not a public utility subject to regulation by the PSC. The PSC's conclusion that MCL 460.10b(1) and MCL 460.10r(6) authorized it to empower CEC to collect a subsidy from customers who had not voluntarily agreed to pay a premium for green power acts to negate, at least in part, MCL 460.6d(1). Appellant contends that the PSC's interpretation and application of MCL 460.10b(1) and MCL 460.10r(6), which interpretation and application authorize CEC to force its customers to pay a higher rate than would be necessary if CEC used lower-cost alternative power, is in contravention of MCL 460.6j(6).

We hold that the PSC lacked the statutory authority to authorize CEC to impose an additional charge of $0.05 a meter each month on all customers, including customers who had not agreed to pay a premium to receive green power, to finance the development of renewable resource power programs. The PSC established a renewable energy program, as required by MCL 460.10r(6). The PSC's authority to set rates that facilitate the development of new energy technologies is set out in MCL 460.10b(1); however, that authority does not include the power to make management decisions on behalf of a utility. *Union Carbide Corp v Pub Service Comm*, 431 Mich 135, 148; 428 NW2d 322 (1988). The PSC's ability to consider a wide variety of factors when setting rates is well-established, *Detroit Edison Co v*

*Pub Service Comm*, 221 Mich App 370, 375; 562 NW2d 224 (1997), but is not unlimited. MCL 460.10b(1) and MCL 460.10r(6) were enacted as part of the CCERA. The Legislature clearly intended consumer participation in green power programs to be voluntary. Neither MCL 460.10b(1) nor MCL 460.10r(6) specifically authorizes the PSC to enable a utility to compel customers to pay to support a voluntary renewable resource energy program even if they have not chosen to receive power from the program. The PSC exceeded its authority in concluding to the contrary. *In re Complaint of Pelland, supra.*

Requiring all customers to pay a monthly charge to build a fund to compensate CEC for costs associated with the development of renewable resource energy programs might well have positive economic and public policy implications; however, we must not consider such implications when determining if the PSC acted within its statutory authority. *Consumers Power Co v Pub Service Comm*, 460 Mich 148, 156; 596 NW2d 126 (1999).

We note that appellant's reliance on MCL 460.6d(1) and MCL 460.6j(6) as support for its assertion that the PSC exceeded its authority by enabling CEC to impose a $0.05 a meter each month charge on all customers to fund green power programs is misplaced. Mackinaw and NAWE own the renewable resource production facilities, and thus are unaffected by CEC's imposition of the surcharge. Moreover, MCL 460.6j(6) does not limit a utility's ability to recover costs only to those situations in which the utility has used the lowest-cost energy available. Nevertheless, we conclude that the PSC's order enabling CEC to impose the $0.05 a meter each month charge on all customers is unlawful, MCL 462.26(8), and reverse that portion of the PSC's May 18, 2004, order authorizing the charge.

B. ISSUANCE OF ORDER WITHOUT HEARING

Appellant argues that the PSC's January 25, 2005, order directing CEC to file an application seeking approval of its proposed renewable resource program tariff is unlawful because the PSC did not hold a contested case hearing before issuing the order. Appellant notes that the PSC may not issue an order altering or amending an order fixing any rate without notice and an opportunity to be heard. MCL 462.24.

MCL 462.24 provides:

> The commission may, at any time upon application of any person or any common carrier, and upon at least 10 days' notice to the parties interested, including the common carrier, and after opportunity to be heard as provided in section 22, rescind, alter or amend any order fixing any rate or rates, fares, charges or classifications, or any other order made by the commission, and certified copies shall be served and take effect as herein provided for original orders.

This argument is without merit. In accordance with the PSC's May 18, 2004, order, the CEC filed an application to implement a new renewable energy program. Thereafter, the PSC solicited comments from interested parties. Various parties, including appellant, submitted comments. Appellant contended that the PSC was required to conduct another contested case hearing before approving CEC's tariff for the new program. In its January 25, 2005, order, the PSC concluded that further hearings were not necessary, given that sufficient notice and an opportunity to be heard existed before the issuance of the May 18, 2004, order and that the January 25, 2005, order did not significantly alter the May 18, 2004, order.

MCL 462.22, the § 22 referred to in MCL 462.24, provides that if the PSC receives a complaint that any

rate charged by a common carrier is unreasonable, the PSC shall, after issuing notice to interested parties and providing an opportunity for those parties to be heard, investigate the matter and issue an order addressing the complaint. In the instant proceeding, the PSC did not receive a complaint asserting that a tariff for CEC's renewable resource energy program was unreasonable. Rather, in its May 18, 2004, order, the PSC directed CEC to offer a new renewable resource energy program. Thereafter, the PSC solicited comments on CEC's proposed new program. The PSC's January 25, 2005, order did not amend any tariff, but simply approved CEC's proposal and directed CEC to submit an application seeking approval of a tariff for the new program. No violation of MCL 462.24 occurred. The PSC's January 25, 2005, order is not unlawful. MCL 462.26(8).[2]

### C. LAWFULNESS OF EXTENSION OF CEC'S CONTRACTS

In an order entered on December 22, 2004, the PSC directed CEC to extend provisions of its previous tariff and its supplier contracts with Mackinaw and NAWE for 30 days beyond their original expiration date of December 31, 2004, i.e., until January 30, 2005. The PSC also extended the exclusive opportunity previously provided Mackinaw and NAWE to develop new green

---

[2] We note that the PSC argues on appeal that, because appellant did not challenge the PSC's directive that CEC implement a new renewable resources program in its appeal of the May 18, 2004, order (Docket No. 256180), it has waived that objection. This argument is without merit. Appellant does not challenge as unlawful or unreasonable the PSC's directive that CEC offer a new renewable resources program. Rather, appellant challenges the PSC's decision to approve CEC's proposal for the new program without conducting a new hearing. This decision was not contained in the PSC's order of May 18, 2004; therefore, appellant had no opportunity to challenge it in its appeal of that order.

power projects for an additional 30 days, also until January 30, 2005.[3] Appellant argues that the PSC lacked the statutory authority to compel CEC to extend its contracts with its suppliers.

We hold that this issue is moot. An issue is moot if an event has occurred that renders it impossible for the court to grant relief. We will review a moot issue only if it is publicly significant and is likely to recur, yet is likely to evade judicial review. *City of Warren v Detroit*, 261 Mich App 165, 166 n 1; 680 NW2d 57 (2004). The PSC ordered the extension of CEC's previous tariff, CEC's contracts with Mackinaw and NAWE, and the exclusive opportunity afforded Mackinaw and NAWE to develop green power projects for an additional 30 days to preserve the status quo until it could complete its review of CEC's proposed additional green power project. Under other circumstances, such an order of extension could be viewed as an unlawful encroachment on CEC's management prerogatives. See *Union Carbide Corp, supra* at 151. However, the extension was necessitated by the procedural posture of this case, and the period of extension has expired. This issue is moot and, under the circumstances presented by this case, does not warrant review. *City of Warren, supra.*

---

[3] In its December 22, 2004, order, the PSC noted that in its order of May 18, 2004, it stated that Mackinaw and NAWE would have the exclusive opportunity to develop new green power projects until December 31, 2004, up to the amount specified in their existing contracts with CEC. The PSC observed that at the time it issued the May 18, 2004, order, it anticipated that it would issue a subsequent order in Case No. U-13843 before December 31, 2004 (i.e., approving CEC's proposed new green power project). However, the PSC found that it could not issue the subsequent order before December 31, 2004, and therefore issued the December 22, 2004, order to preserve the status quo for 30 days, until January 30, 2005.

### D. AUTHORITY TO REQUIRE CEC TO PURCHASE A MINIMUM PERCENTAGE OF ELECTRICITY SUPPLIES FROM RENEWABLE ENERGY SUPPLIERS

Appellant argues that the PSC exceeded its authority in its January 25, 2005, order when it directed CEC to purchase a minimum percentage of its electric power supply from renewable energy suppliers. Appellant emphasizes that the PSC's regulatory authority does not include the ability to make management decisions. *Union Carbide, supra*; see also *Consumers Power Co v Pub Service Comm*, 189 Mich App 151, 179-180; 472 NW2d 77 (1991).

This issue is without merit. In its January 25, 2005, order, the PSC stated that CEC estimated that its renewable resource program fund, including the surcharge of $0.05 a meter each month imposed on all customers, would be sufficient to support the purchase of 100 megawatts (MW) of wind energy or 75 MW of landfill gas production, even if additional customers did not agree to purchase green power. The PSC indicated that it expected that these quantities of green power would be "sufficient to provide developers with reasonable opportunities to achieve practical economies of scale." However, the PSC specifically stated that it declined to "prescribe a specific quantity [of supply] to be purchased at this time, or a specific time schedule for Consumers to obtaining [sic] a specific quantity." Appellant points to no language in the PSC's order that supports its assertion; therefore, we deem this challenge to be abandoned on appeal. *People v Watson*, 245 Mich App 572, 587; 629 NW2d 411 (2001); *Hall v Small*, 267 Mich App 330, 335; 705 NW2d 741 (2005).

### E. AUTHORITY TO ISSUE EX PARTE ORDER APPROVING CEC'S TARIFF

Appellant argues that the PSC's ex parte order of April 28, 2005, in which it approved CEC's proposed tariff for its

new renewable resource program, is unlawful. Appellant asserts that the PSC violated MCL 462.24 by approving the tariff on an ex parte basis.

This issue is without merit. For the reasons discussed in part B, we conclude that the requirements of MCL 462.24 were inapplicable to this case. The PSC's decision that no hearing was needed was a reasonable interpretation of the regulatory scheme it is empowered to administer and is entitled to great deference. *Champion's Auto Ferry, supra.*

### IV. CONCLUSION

That portion of the PSC's May 18, 2004, order authorizing CEC to impose a $0.05 a meter each month charge on all customers to finance green power projects is reversed on the ground that the PSC lacked the statutory authority to approve such a surcharge. The remainder of the May 18, 2004, order, and the orders of January 25, 2005, and April 28, 2005, are lawful and reasonable, comply with the legislative intent of the enabling statutes, and are supported by the requisite evidence.

Affirmed in part and reversed in part.