*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

HAROLD D. BUCK,

        Plaintiff,

and

HARRIET R. BUCK,

        Plaintiff-Appellee,

v

HERITAGE PLACE CONDOMINIUMS, LLC,

        Defendant-Appellant,

and

SHIRLEY MULL,

        Defendant.

UNPUBLISHED
September 15, 2022

Nos. 356948 and 358244
Wayne Circuit Court
LC No. 18-000086-CH

Before: CAVANAGH, P.J., and GARRETT and YATES, JJ.

PER CURIAM.

In Docket No. 356948, defendant-appellant, Heritage Place Condominiums, LLC (Heritage Place), appeals as of right an April 1, 2021 judgment entered in favor of plaintiff-appellee, Harriet Buck (Harriet), on her breach-of-contract claim in the amount of $45,000. Heritage Place also challenges the trial court's December 11, 2020 denial of its motion for summary disposition. We reverse the trial court's December 11, 2020 order and vacate the April 1, 2021 judgment.

In Docket No. 358244, Heritage Place appeals as of right a May 14, 2021 order which granted Harriet $7,879.25 in case evaluation sanctions. Heritage Place also challenges the trial

-1-

court's August 5, 2021 decision to deny its motion for reconsideration from the May 14, 2021 order. We vacate the trial court's May 14, 2021 and August 5, 2021 orders.

## I. BACKGROUND

Heritage Place is a limited liability company that was formed to purchase Heritage Place Apartments, a former apartment complex in Dearborn, Michigan. After the purchase, the apartments were converted into condominiums, which were named Heritage Pointe Condominiums. Shirley Mull (Mull) and Jerry White (White) are members of companies that own interests in Heritage Place.

At all relevant times, Harold Buck (Harold) and Harriet were married. In 2007, Harold and Harriet decided to purchase a condominium from Heritage Place. On July 3, 2007, Harold, Harriet, and White—Heritage Place's managing member at the time—executed a purchase agreement. Heritage Place agreed to deliver "a Warranty Deed conveying marketable title" to Harold and Harriet in exchange for $115,000 in cash. The agreement reflected an earnest money deposit had been made. On July 9, 2007, the city of Dearborn issued a certificate of occupancy to Harold, who was listed as the "Owner" of the property. A preliminary Housing and Urban Development (HUD) closing statement was prepared by Century Title Agency, LLC, which reflected closing was scheduled to occur on July 10, 2007, and that Harold and Harriet owed a balance of $102,170.09. The statement was not signed or dated, and there is no evidence title insurance was issued.

On July 10, 2007, the closing took place at Heritage Place's office, at which point Harold provided an agent of Heritage Place a cashier's check for the balance owed. Harold and Harriet signed documents, including a "Bill of Sale," which reflected Heritage Place conveyed the "Household Items" located in the condominium to Harold and Harriet in exchange "for valuable consideration" received. Although Harriet and Harold did not receive a deed, they did not inquire into the matter further and relied on representations that an agent of Heritage Place would record a deed. Thereafter, Harold and Harriet moved into the condominium and consistently paid association fees and property taxes.

In June 2016, Mull replaced White as Heritage Place's managing member, and Harold and Harriet decided to sell the condominium. In February 2017, Harriet entered into a purchase agreement with Mull, and it was discovered a deed was never recorded after the 2007 sale. Harold and Harriet did not have a copy of the cashier's check that was provided at the 2007 closing, and they were unable to obtain a copy from their bank. Mull "retracted [the] offer" on behalf of Heritage Place, and Harriet and Mull rescinded the purchase agreement. Mull changed the locks on the property and sold it to a third party in December 2017.

On January 3, 2018, Harold and Harriet filed a complaint, in relevant part alleging claims of quiet title and breach of contract. They later filed a first-amended complaint. In June 2020, Harold died. Heritage Place and Mull moved for summary disposition arguing, in relevant part, the breach-of-contract claim was barred by the six-year statute of limitations set forth in MCL 600.5807(9), and Harriet could not establish superior title because she did not have a deed. Mull also argued she should be dismissed as a defendant because she never claimed an interest in the property and was not a party to the 2007 purchase agreement. Harriet opposed the motion, in part,

arguing Heritage Place fraudulently concealed the breach-of-contract claim through the actions of its agents at closing and through their inaction in the years that followed. The trial court dismissed Mull as a defendant, but concluded questions of fact existed as to whether Harriet "purchased the property and [whether] the statute of limitations for breach of contract [was] tolled due to fraudulent concealment."

In March 2021, a bench trial commenced, at which point Harriet agreed dismissal of the quiet-title-claim was proper. Harriet testified as to the breach-of-contract claim, as did a former representative from Century Title Agency. On April 1, 2021, the trial court issued a written opinion and order. The trial court found (1) the 2007 purchase agreement was a valid contract, (2) a "sham closing" occurred on July 10, 2007, and (3) Heritage Place breached the purchase agreement by failing to convey title to Harriet. The trial court concluded the six-year statute of limitations generally applicable to contract actions did not bar the breach-of-contract claim because "the discovery rule dictates that the statute did not begin to run until [Harriet] discovered [she] did not own the property, which occurred in 2017." The trial court found $45,000 in damages on Harriet's breach-of-contract claim had been "proven by a preponderance of the evidence." The appeal in Docket No. 356948 followed.

On April 28, 2021, Harriet moved for case evaluation sanctions in the amount of $7,879.25, but failed to attach exhibits or file a notice of hearing. Despite this and the fact Heritage Place had not filed a response to the motion, the trial court waived oral argument and granted the motion in a May 14, 2021 order. Heritage Place moved for reconsideration, arguing violations of MCR 2.119(C), and its due process right to be heard. Additionally, Heritage Place argued the trial court failed to "make the required determination of what constitutes a reasonable rate or a reasonable number of hours or analyze the relevant factors in awarding case evaluation sanctions." On August 5, 2021, the trial court denied Heritage Place's motion for reconsideration, and the appeal in Docket No. 358244 followed. This Court consolidated the appeals "to advance the efficient administration of the appellate process." *Buck v Heritage Place Condos, LLC*, unpublished order of the Court of Appeals, entered August 24, 2021 (Docket Nos. 356948 and 358244).

On appeal, Heritage Place argues that the trial court erred by failing to grant its motion for summary disposition on statute of limitation grounds under MCR 2.116(C)(7), and by concluding the common-law discovery rule applied following the bench trial. We agree.

## II. STANDARD OF REVIEW

"This Court reviews de novo a circuit court's decision on a motion for summary disposition brought under MCR 2.116(C)(7)." *Altobelli v Hartmann*, 499 Mich 284, 294-295; 884 NW2d 537 (2016).

> When reviewing a motion under MCR 2.116(C)(7), this Court must accept all well-pleaded factual allegations as true and construe them in favor of the plaintiff, unless other evidence contradicts them. If any affidavits, depositions, admissions, or other documentary evidence are submitted, the court must consider them to determine whether there is a genuine issue of material fact. If no facts are in dispute, and if reasonable minds could not differ regarding the legal effect of those facts, the question whether the claim is barred is an issue of law for the court. However, if a question of fact exists to the extent that factual development could

provide a basis for recovery, dismissal is inappropriate. [*Dextrom v Wexford Co*, 287 Mich App 406, 428-429; 789 NW2d 211 (2010) (citations omitted).]

This Court "review[s] de novo a trial court's interpretation and application of a statute." *City of Grand Rapids v Brookstone Capital, LLC*, 334 Mich App 452, 457; 965 NW2d 232 (2020).

"A trial court's factual findings in a bench trial are reviewed for clear error." *Prentis Family Foundation v Barbara Ann Karmanos Cancer Institute*, 266 Mich App 39, 59; 698 NW2d 900 (2005). "A finding is clearly erroneous where, after reviewing the entire record, this Court is left with a definite and firm conviction that a mistake has been made. This Court is especially deferential to the trial court's superior ability to judge of the relative credibility of witnesses[.]" *Smith v Straughn*, 331 Mich App 209, 215; 952 NW2d 521 (2020) (alteration in original; quotation marks and citations omitted). "This Court reviews . . . de novo [a] trial court's conclusions of law" following a bench trial. *Trader v Comerica Bank*, 293 Mich App 210, 215; 809 NW2d 429 (2011).

## III. ANALYSIS

MCL 600.5807(9) states: "The period of limitations is 6 years for an action to recover damages or money due for breach of contract. . . ." In pertinent part, MCL 600.5827 states: "[T]he period of limitations runs from the time the claim accrues . . . . [T]he claim accrues at the time the wrong upon which the claim is based was done regardless of the time when damage results." "For a breach of contract action, the limitations period generally begins to run on the date that the breach occurs." *Seyburn, Kahn, Ginn, Bess, Deitch & Serlin, PC v Bakshi*, 483 Mich 345, 355; 771 NW2d 411 (2009).

In this case, Harriet alleged Heritage Place breached the 2007 purchase agreement by failing to convey the property in July 2007. When the complaint was filed in January 2018, it had been more than 10 years since the alleged breach occurred. Harriet acknowledged in the trial court that she did not bring her breach-of-contract claim within the statutory six-year period. Instead, she argued MCL 600.5855, the fraudulent concealment statute, applied to give her two years after she discovered the contract breach to bring suit. In MCL 600.5855, our Legislature recognized the potential for tolling of a limitations period under the following circumstances:

> If a person who is or may be liable for any claim fraudulently conceals the existence of the claim or the identity of any person who is liable for the claim from the knowledge of the person entitled to sue on the claim, the action may be commenced at any time within 2 years after the person who is entitled to bring the action discovers, or should have discovered, the existence of the claim or the identity of the person who is liable for the claim, although the action would otherwise be barred by the period of limitations.

In *Doe v Roman Catholic Archbishop of Archdiocese of Detroit*, 264 Mich App 632, 642-643; 692 NW2d 398 (2004), this Court explained:

> Fraudulent concealment means employment of artifice, planned to prevent inquiry or escape investigation, and mislead or hinder acquirement of information disclosing a right of action. The acts relied on must be of an affirmative character

and fraudulent. [T]he fraud must be manifested by an affirmative act or misrepresentation. Thus, [t]he plaintiff must show that the defendant engaged in some arrangement or contrivance of an affirmative character designed to prevent subsequent discovery. [T]here must be concealment by the defendant of the existence of a claim or the identity of a potential defendant, and the plaintiff must plead in the complaint the acts or misrepresentations that comprised the fraudulent concealment. If there is a known cause of action there can be no fraudulent concealment which will interfere with the operation of the statute, and in this behalf a party will be held to know what he ought to know . . . . [Quotation marks and citations omitted; alterations in original.]

In its motion for summary disposition, Heritage Place argued that Harriet failed to plead "the acts or misrepresentations that comprised the fraudulent concealment," and we agree. In the first-amended complaint, Harriet did not allege Heritage Place affirmatively acted or made misrepresentations to prevent her from discovering the breach of contract. Although Harriet alleged White provided her and Harold with certain documentation at the closing, it is clear those allegations were part of Harriet's quiet-title claim. There is simply no indication Harriet was attempting to claim the statute of limitations was tolled on the basis of fraudulent concealment, and we conclude that Harriet failed to sufficiently assert Heritage Place's agents committed fraudulent conduct so as to toll the statute of limitations. See *Sills v Oakland Gen Hosp*, 220 Mich App 303, 310; 559 NW2d 348 (1996) (holding the plaintiff failed to sufficiently plead fraudulent conduct so as to toll the statute of limitations where the allegations in the complaint did not support "acts or misrepresentation that comprised the fraudulent misrepresentation").

Additionally, the evidence submitted by Harriet to support denial of Heritage Place's motion for summary disposition did not support that a question of fact existed as to whether application of the fraudulent concealment tolling provision was proper. Harriet argued Heritage Place's agents concealed their failure to convey title by: (1) providing the HUD settlement statement and bill of sale at the July 2007 closing, (2) providing the certificate of occupancy, (3) permitting Harold and Harriet to live on the property uninterrupted for 10 years, and (4) collecting association fees as if Harold and Harriet were the legal owners of the property. Harriet submitted documentation to support that these things occurred. Harriet also filed an affidavit, wherein she averred White "represented" a warranty deed would be recorded. According to Harriet, she and Harold "relied" on this "representation. . . ." Harriet averred she and Harold "first became aware" the warranty deed was not recorded and "the record title to the Property was still in the name of Heritage Place" after they entered into the purchase agreement with Mull in 2017.

When determining whether a defendant engaged in fraudulent concealment, the relevant focus is on the defendant's actions after the alleged injury occurred. See *Doe*, 264 Mich App at 641 ("It is quite clear that only actions after the alleged injury could have concealed [the] plaintiff's causes of action against [the] defendant because actions taken before the alleged injury would not have been capable of concealing causes of action that did not yet exist."). Thus, the relevant focus is on the actions of Heritage Place's agents *after* the alleged breach of contract. However, there is no indication Heritage Place's agents engaged in any actions to conceal the failure to convey the property after July 2007. Rather, Harold and Harriet made payments to the association and paid property taxes. Although Harriet averred Heritage Place's agents never questioned Harold and

Harriet living on the property and acting as the owners, this amounts to *inaction* on the part of Heritage Place. See *id*. at 642 ("[T]he fraud must be manifested by an affirmative act or misrepresentation."). Therefore, this conduct is irrelevant to the question of whether fraudulent concealment occurred.

Even to the extent that White providing Harold and Harriet with the HUD closing statement, the certificate of occupancy, and the bill of sale at the time of closing could be considered, there is no evidence White "engaged in some arrangement or contrivance of an affirmative character designed to prevent subsequent discovery" such that his actions concealed the existence of the breach-of-contract claim or any other claim. See *Doe*, 264 Mich App at 642-643. Although White indicated an agent of Heritage Place would record the deed, Harriet did not check the public record to ensure a deed was recorded. A person is charged with knowledge of the public record. *In re Farris Estate*, 160 Mich App 14, 18-19; 408 NW2d 92 (1987) ("Petitioner cannot rely on MCL 600.5855 . . . to postpone the running of the four-year period of limitation because petitioner is charged with knowledge of the information contained in the public record."). Generally, there can be no tolling of the limitations period if the plaintiff could have discovered the existence of the cause of action from public records, see *Heap v Heap*, 258 Mich 250, 263; 242 NW 252 (1932), and a plaintiff will be held to know what he or she ought to know by the exercise of ordinary diligence, *Eschenbacher v Hier*, 363 Mich 676, 681-682; 110 NW2d 731 (1961).

In summary, the undisputed evidence established (1) agents of Heritage Place did not engage in affirmative acts or misrepresentation after July 2007, and (2) Harriet failed to exercise diligence to discover the breach-of-contract claim. Therefore, MCL 600.5855 did not toll the statute of limitations. Because there was no factual dispute the statute of limitations was expired on the breach-of-contract action under MCL 600.5807(9) when the complaint was filed, the trial court erred by failing to grant summary disposition under MCR 2.116(C)(7). See *Dextrom*, 287 Mich App at 429.

The trial court also erred by failing to dismiss the breach-of-contract claim after the bench trial. Harriet testified that she was never provided a deed after the July 2007 closing, which should have alerted Harriet of a possible cause of action in 2007. Importantly, to be sufficiently apprised of a cause of action, a plaintiff need only be aware of a possible cause of action; it is not necessary he or she know the details of the evidence supporting the claim. See *Doe*, 264 Mich App at 643, 647. Additionally, consistent with her affidavit, Harriet testified she believed an agent from Heritage Place would record the deed and did not check the public record until 2017. Therefore, there was no evidence presented at trial to support that agents of Heritage Place engaged in affirmative acts or misrepresentation after July 10, 2007. Instead, the evidence supported Harriet should have been aware of a potential claim in July 2007, and she failed to exercise diligence to discover the breach-of-contract claim.

Additionally, application of the common-law discovery rule could not save Harriet's breach-of-contract claim because it was abrogated by our Supreme Court in *Trentadue v Buckler Lawn Sprinkler Co*, 479 Mich 378; 738 NW2d 664 (2007). The plaintiff in *Trentadue* alleged her wrongful death claim survived the three-year statute of limitations outlined in MCL 600.5827 because the common-law discovery rule applied to toll the statute of limitations. *Id*. at 383-389. Our Supreme Court disagreed, noting "the Legislature has the authority to abrogate the common law," and "if a statutory provision and the common law conflict, the common law must yield." *Id*.

at 389.  The *Trentadue* Court concluded "the relevant sections of the Revised Judicature Act comprehensively establish limitations periods, times of accrual, and tolling for civil cases." *Id*. at 390.  The Court further concluded:

> MCL 600.5855 is a good indication that the Legislature intended the scheme to be comprehensive and exclusive.  MCL 600.5855 provides for essentially unlimited tolling based on discovery when a claim is fraudulently concealed.  If we may simply apply an extrastatutory discovery rule in any case not addressed by the statutory scheme, we will render § 5855 effectively meaningless.

> \* \* \*

> Since the Legislature has exercised its power to establish tolling based on discovery under particular circumstances, but has not provided for a general discovery rule that tolls or delays the time of accrual if a plaintiff fails to discover the elements of a cause of action during the limitations period, no such tolling is allowed.  Therefore, we conclude that courts may not employ an extrastatutory discovery rule to toll accrual in avoidance of the plain language of MCL 600.5827. . . .  Because the statutory scheme here is comprehensive, the Legislature has undertaken the necessary task of balancing plaintiffs' and defendants' interests and has allowed for tolling only where it sees fit.  This is a power the Legislature has because such a statute of limitations bears a reasonable relationship to the permissible legislative objective of protecting defendants from stale or fraudulent claims.  [*Id*. at 391-392 (footnotes omitted).]

Although *Trentadue* specifically addressed whether the common-law discovery rule could be applied to avoid MCL 600.5827's three-year statute of limitations, the same logic applies in this case.  Indeed, like in *Trentadue*, applying the common-law discovery rule in this case would render MLC 600.5807(9) and MCL 600.5855 "effectively meaningless" despite the fact the Legislature intended the Revised Judicature Act "to be comprehensive and exclusive." *Trentadue*, 479 Mich at 391.  Because only the statutory scheme applies to toll the six-year statute of limitations contained in MCL 600.5807(9), which is also contained in the Revised Judicature Act, the trial court erred by applying the common-law discovery rule.[1]  The trial court further erred by failing to dismiss the breach-of-contract claim at the conclusion of the bench trial.

---

[1] Even if the common-law discovery rule was not abrogated, it would not apply in this case.  "Under a discovery-based analysis, a claim does not accrue until a person knows, or objectively should know, that he [or she] has a cause of action and can allege it in a proper complaint." *Trentadue*, 479 Mich at 389.  As already stated, the evidence establishes Harriet did not exercise due diligence to discover the breach-of-contract claim, i.e., failing to inquire with Heritage Place after the closing concerning the deed and failing to search the public record to ensure a deed was recorded.

## IV. CONCLUSION

In Docket No. 356948, we reverse the trial court's December 11, 2020 order denying Heritage Place's motion for summary disposition and vacate the April 1, 2021 judgment. In Docket No. 358244, we vacate the trial court's May 14, 2021 order awarding Harriet case-evaluation sanctions and vacate the trial court's August 5, 2021 order denying Heritage Place's motion for reconsideration. Given these holdings, it is unnecessary to specifically consider the remainder of Heritage Place's arguments on appeal as they are moot. See *Attorney General v Pub Serv Comm*, 269 Mich App 473, 485; 713 NW2d 290 (2005).

/s/ Mark J. Cavanagh
/s/ Kristina Robinson Garrett
/s/ Christopher P. Yates