*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MARC MENDELSON and LISA MENDELSON,

        Plaintiffs/Counterdefendants-
        Appellees,

v

ROBERTUS SCHMIT,

        Defendant/Counterplaintiff/Third-
        Party Plaintiff-Appellant,

BANK OF AMERICA,

        Defendant,

and

MICHAEL SUCHOWSKI and ROXIE
SUCHOWSKI,

        Third-Party Defendants.

UNPUBLISHED
November 30, 2023

Nos. 363177 and 364285
Oakland Circuit Court
LC No. 2020-184854-CK

Before: MURRAY, P.J., and CAMERON and PATEL, JJ.

PER CURIAM.

In Docket No. 363177, defendant/counterplaintiff/third-party plaintiff, Robertus Schmit, appeals by right the September 12, 2022 order, which granted summary disposition in favor of plaintiffs/counterdefendants, Marc and Lisa Mendelson, under MCR 2.116(C)(10) on their prescriptive easement claim. The September 12, 2022 order also dismissed Schmit's counterclaims for ejectment, nuisance, and trespass against the Mendelsons and denied, in part, Schmit's motion for summary disposition. In Docket No. 364285, Schmit appeals by leave

-1-

granted[1] a December 5, 2022 order, which denied Schmit's postjudgment motion for clarification. With respect to the September 12, 2022 order, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion. Schmit's arguments concerning the December 5, 2022 order are moot, and the appeal in Docket No. 364285 is dismissed.

## I. BACKGROUND

This case involves three adjacent properties on Middlebelt Road in West Bloomfield, which abut Walnut Lake. In 1985, Richard and Ruth Baidas purchased property located at 5565 Middlebelt Road (the Mendelson property). The Baidases purchased a boat, which was seasonally moored to a dock that remained in Walnut Lake year-round. The Baidases also installed a boat hoist, which was removed after the boating season. According to Ruth, the location of the boat hoist and the Baidases' boat changed over the years and there were never complaints from the neighbors concerning the location of the boat, the dock, or the hoist.

In 2008, Marc purchased the Mendelson property, which was advertised as including a dock and boat hoist. In 2009, third-party defendant, Michael Suchowski, who owns the property south of the Mendelson property, requested that Marc move his dock to the north so that Michael and his wife, third-party defendant, Roxie Suchowski, could have their own dock. Marc moved his dock to the north, which would remain in Walnut Lake year-round at all relevant times, and removed the boat hoist. After the Suchowskis installed their own dock, Marc moored his boat between the Suchowski dock and his dock.

In 2013, Schmit purchased the property to the north of the Mendelson property (the Schmit property). In 2020, Schmit discovered the Mendelsons' dock encroached onto a portion of his bottomlands. In September and November 2020, Schmit requested the Mendelsons remove the dock from his bottomlands. The Mendelsons did not do so and instead filed suit against Schmit in November 2020, alleging they had title to the bottomlands by adverse possession or, in the alternative, they had a right to use the bottomlands by a prescriptive easement. According to the Mendelsons, the dock had been on the bottomlands continuously since 1985. Schmit answered the Mendelsons' complaint and filed counterclaims against the Mendelsons.[2] Schmit alleged claims of (1) ejectment, (2) nuisance, and (3) trespass. Schmit alleged the dock was not placed on

---

[1] *Mendelson v Schmit*, unpublished order of the Court of Appeals, entered February 15, 2023 (Docket No. 364285).

[2] Schmit also filed a third-party complaint against the Suchowskis, alleging their dock was encroaching on his bottomlands. The Suchowskis' dock was later removed, and the trial court granted summary disposition in their favor after concluding the removal of the dock rendered the issues raised by Schmit moot. Schmit did not appeal this decision. The Mendelsons also filed suit against the Suchowskis, alleging their dock infringed on the Mendelsons' bottomlands. The suit was resolved after the Mendelsons and the Suchowskis reached an agreement, which permitted the Mendelsons to use the Suchowskis' dock.

his bottomlands until 2009. Schmit requested the trial court award him damages, and order the Mendelsons to remove the dock from his bottomlands.

The parties ultimately filed competing motions for summary disposition under MCR 2.116(C)(10). After hearing oral arguments on the motions, the trial court dismissed the Mendelsons' adverse possession claim, concluding the Baidases' and the Mendelsons' occupation of the bottomlands was not exclusive. The trial court held that the Mendelsons had a prescriptive easement, however, and dismissed Schmit's counterclaims. The appeal in Docket No. 363177 followed.

While the appeal in Docket No. 363177 was pending, Schmit moved the trial court to clarify the September 12, 2022 opinion and order to define the scope of the prescriptive easement. The trial court declined to do so, and Schmit sought and was granted leave to appeal in Docket No. 364285.[3] Thereafter, the Mendelsons sought a writ of assistance from this Court. The motion was related to Schmit's installation of a dock, which the Mendelsons asserted blocked their access to the easement. This Court denied the motion "without prejudice to being re-filed once the appeal has been assigned to a case call panel." *Mendelson v Schmit*, unpublished order of the Court of Appeals, entered May 17, 2023 (Docket No. 363177).

## II. STANDARDS OF REVIEW

We review equitable rulings de novo. *1373 Moulin, LLC v Wolf*, 341 Mich App 652, 663; 992 NW2d 314 (2022). We also review "de novo a trial court's decision on a motion for summary disposition." *Bailey v Antrim County*, 341 Mich App 411, 421; 990 NW2d 372 (2022) (quotation marks and citation omitted). A "[d]e-novo review means that we review the legal issue independently, without deference to the lower court." *Bowman v Walker*, 340 Mich App 420, 425; 986 NW2d 419 (2022) (quotation marks and citation omitted).

> A motion under MCR 2.116(C)(10) . . . tests the factual sufficiency of a claim. When considering such a motion, a trial court must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion. A motion under MCR 2.116(C)(10) may only be granted when there is no genuine issue of material fact. A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ. [*El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 160; 934 NW2d 665 (2019) (quotation marks, citations, and emphasis omitted).]

"The trial court is not permitted to assess credibility, weigh the evidence, or resolve factual disputes, and if material evidence conflicts, it is not appropriate to grant a motion for summary disposition under MCR 2.116(C)(10)." *Ass'n of Home Help Care Agencies v Dep't of Health & Human Servs*, 334 Mich App 674, 684 n 4; 965 NW2d 707 (2020) (quotation marks and citation omitted). "Like the trial court's inquiry, when an appellate court reviews a motion for summary

---

[3] *Mendelson v Schmit*, unpublished order of the Court of Appeals, entered February 15, 2023 (Docket No. 364285).

disposition, it makes all legitimate inferences in favor of the nonmoving party." *Skinner v Square D Co*, 445 Mich 153, 162; 516 NW2d 475 (1994).

### III. ANALYSIS

Schmit argues the trial court erred by granting summary disposition in favor of the Mendelsons on their prescriptive easement claim.

In *Astemborski v Manetta*, 341 Mich App 190, 196; 988 NW2d 857 (2022), we recently explained:

> Land which includes or is bounded by a natural watercourse is defined as riparian. It is well established that a riparian owner enjoys certain exclusive rights, which include the right to erect and maintain docks along the owner's shore, and the right to anchor boats permanently off the owner's shore. A nonriparian owner, on the other hand, has a right to use the surface of the water in a reasonable manner for such activities as boating, fishing and swimming, as well as the right to anchor boats temporarily. However, a riparian owner may grant nonriparian owners the right to access and enjoy a lake by easement or license.

> An easement is a limited property interest; it is the right to use the land burdened by the easement for a specific purpose. [A]n easement may be created by express grant, by reservation or exception, or by covenant or agreement[.] Easements may also be acquired by prescription. [Alterations in original; quotation marks and citations omitted.]

Although an easement constitutes a property right, it is not a true ownership interest in land. *Schumacher v Dep't of Natural Resources*, 275 Mich App 121, 130; 737 NW2d 782 (2007). Rather, it is a limited right to use property owned by another, and that use is generally confined to a particular purpose. *Id*. at 130-131. "The land burdened by [an] easement is the servient estate, and the land benefited by the easement is the dominant estate." *Astemborski*, 341 Mich App at 197 (quotation marks and citation omitted; alteration in original).

The trial court concluded the Mendelsons had an easement by prescription to use a portion of the Schmit property's bottomlands and granted summary disposition in favor of the Mendelsons on their prescriptive easement claim.

> An easement by prescription is based upon the legal fiction of a lost grant, and results from action or inaction leading to a presumption that the true owner of the land, by his acquiescence, has granted the interest adversely held. An easement by prescription results from use of another's property that is open, notorious, adverse, and continuous for a period of fifteen years.

> [A] prescriptive easement is no more than an unopposed, continuous trespass [on another's property] for 15 years. If no single period of adverse use amounts to the 15-year statutory period, a party claiming a prescriptive interest may tack the possessory periods of their predecessors in interest to aggregate the 15-

year period of prescription if the claimant can show privity of estate. [*Id*. at 197-198 (second alteration in original; quotation marks and citations omitted).]

With respect to whether the dock was continuously encroaching on the Schmit property's bottomlands for the requisite 15-year period of prescription, Ruth testified there was a dock on the Mendelson property when she and Richard purchased it in 1985. While the Baidases replaced their dock in the 1990s, the new dock was placed in the same location as the previous dock.[4] It is undisputed the dock remained in the same location until the spring or summer of 2009, when Marc moved the dock to the north and removed the boat hoist.

Aerial photographs support that a portion of the dock infringed on the Schmit property's bottomlands beginning in 2006, and continued to infringe on the bottomlands in 2008.[5] After Marc moved the dock in 2009, it occupied an even more significant (and thus partially different) portion of the bottomlands. Therefore, to establish a prescriptive easement, the dock had to remain on the Schmit property until 2021, in an unopposed manner. See *Astemborski*, 341 Mich App at 198 (holding "a prescriptive easement is no more than an unopposed, continuous trespass [on another's property] for 15 years") (quotation marks and citation omitted; alteration in original). Because Schmit opposed the location of the dock in 2020, demanding it be removed, the placement of the dock on the Schmit property's bottomlands did not ripen into a prescriptive easement. See *id*.

While the Mendelsons attempt to rely on the location of the boat hoist and argue Marc moved the dock to the exact location of the boat hoist in 2009, this argument is unavailing for two reasons. First, Ruth testified the boat hoist was removed from Walnut Lake at the end of each boating season when she owned the Mendelson property. As noted by the trial court, seasonal use can be considered continuous. See *Dyer v Thurston*, 32 Mich App 341, 344; 188 NW2d 633 (1971). Importantly, however, Ruth testified the boat hoist was placed on different sides of the dock between the time the hoist was initially installed in the 1990s, and when the Mendelson property was sold to Marc in November 2008. According to Ruth, "[s]ometimes [the boat hoist] was to the right of the dock, sometimes it was to the left of the dock." Aerial photographs support, if the boat hoist was placed on the south side of the dock during the boating season, it would not infringe on the Schmit property's bottomlands. Therefore, the seasonal use of the boat hoist from sometime in the 1990s, to the spring or summer of 2009, when Marc removed it, cannot be considered when determining whether there was continuous, seasonal use for 15 years.

Second, aerial photographs establish that, when Marc moved the dock in 2009, the infringement on the Schmit property's bottomlands was more significant. Importantly, a prescriptive right inures only to the actual portion of the property that the claimant adversely used for the 15-year period and does not extend to additional property not used. *Engel v Gildner*, 248 Mich 95, 99-100; 226 NW 849 (1929). In *Engel*, the defendants used part of the plaintiffs' land as a driveway for 25 years. *Id*. at 97-99. When the plaintiffs extended their driveway, the

---

[4] We agree with Schmit that the trial court erred by concluding the evidence established the dock was seasonal in nature.

[5] We acknowledge Schmit's argument that the aerial photographs, which include purported property lines, are imprecise.

defendants sought to use more of the plaintiffs' land. *Id*. at 98-99. Our Supreme Court found the defendants established a prescriptive right to continue their historic use of the plaintiffs' driveway, but they had not established a right to use the extension. *Id*. at 99-100.

The Mendelsons seek precisely the kind of expanded use that *Engel* forbids. The placement of the dock in 2009 requires a greater use of the Schmit property's bottomlands than was required by the boat hoist and prior dock. Indeed, the dock physically required use of more of the bottomlands. Additionally, at all relevant times, the dock remained in Walnut Lake year-round. In contrast, the boat hoist was removed after the boating season each year. The Mendelsons' use of the property after the dock was moved, and the boat hoist was removed in 2009, amounts to a new burden on the Schmit property and does not support that there was a continuous use for the required period of 15 years. See *Heydon v MediaOne of Southeast Mich, Inc*, 275 Mich App 267, 271; 739 NW2d 373 (2007) ("A prescriptive easement is generally limited in scope by the manner in which it was acquired and the previous enjoyment.").

The Mendelsons' argument that "the movement of the dock is a red herring because the Mendelsons' boat was moored in the same position as their predecessors for well beyond the fifteen (15) year prescriptive easement requirement," is unsupported by the record. Ruth testified she and Richard often moved their boat from the north side of the dock to the south side of the dock. This movement interrupted any continuous prescriptive use. While Dr. Geoffrey Gladstone and Michael averred, beginning in 2000, that the Baidases seasonally docked their boat on the north side of the dock when the Baidases owned the Mendelson property, there is no evidence the Baidases' boat ever infringed on the bottomlands of the Schmit property. Thus, the Baidases' docking or mooring of their boat cannot be considered when determining whether the 15-year period of prescription was met. Additionally, the Mendelsons' seasonal mooring of their boat over the Schmit property's bottomlands, which did not begin until 2009, did not reach the required 15-year period to establish a prescriptive easement.

The Mendelsons cannot rely on an underwater tube used for lawn maintenance to support a prescriptive easement in relation to the dock. The prescriptive right inures only to the actual portion of the property that the claimant adversely used for the statutory period and does not extend to additional property not used. *Engel*, 248 Mich at 99-100. The Mendelsons' attempt to liken an unseen underwater tube to a dock that floated on Walnut Lake year-round and had multiple poles that rested on the bottomlands is unpersuasive. The dock undoubtedly amounts to a new burden on the Schmit property. See *Heydon*, 275 Mich App at 271 ("A prescriptive easement is generally limited in scope by the manner in which it was acquired and the previous enjoyment."). The tube cannot be considered when determining whether the required 15-year period of prescription was met.

In sum, because the Mendelsons cannot establish that a 15-year unopposed, continuous trespass occurred on the relevant portions of the Schmit property's bottomlands, Schmit was entitled to summary disposition in his favor on the Mendelsons' claim for a prescriptive easement. See *Astemborski*, 341 Mich App at 198. The trial court erred by holding otherwise, and it necessarily follows the trial court erred by denying summary disposition in favor of Schmit on his ejectment and trespass claims. See *New Prods Corp v Harbor Shores BHBT Land Dev, LLC*, 308 Mich App 638, 649; 866 NW2d 850 (2014) ("[A]n action for ejectment [is] a proper action for resolving disputes concerning who held paramount legal title to property and the right to

immediate possession."); *Wiggins v City of Burton*, 291 Mich App 532, 533; 805 NW2d 517 (2011) ("[r]ecovery for trespass to land . . . is available . . . upon proof of an unauthorized direct or immediate intrusion of a physical, tangible object onto land over which the plaintiff has a right of exclusive possession") (quotation marks and citation omitted).

We remand so the trial court can consider whether it is proper to award Schmit additional relief, i.e., injunctive relief or damages. While the Mendelsons argue Schmit failed to establish he was damaged by their alleged improper occupation of his bottomlands, damages for trespass can be nominal. See *id*. at 555. See also *New Prods Corp*, 308 Mich App at 649 ("the only remedies available to a plaintiff who prevail[s] in an action for ejectment [are] damages for the trespass and a writ of possession") (quotation marks and citation omitted). However, the trial court did not err by denying summary disposition in favor of Schmit on his nuisance claim. See *Wiggins*, 291 Mich App at 556 (holding "because the drain at issue . . . constituted a tangible object, its presence on the . . . parcel was actionable in trespass rather than in nuisance"). Therefore, that portion of the trial court's September 12, 2022 order is affirmed.

## IV. CONCLUSION

In Docket No. 363177, we reverse the trial court's order granting summary disposition in favor of the Mendelsons on their prescriptive easement claim and denying Schmit's motion for summary disposition on his ejectment and trespass claims. We affirm the trial court's denial of summary disposition on Schmit's nuisance claim. Given these holdings, it is unnecessary to consider Schmit's arguments on appeal in Docket No. 364285 because they are moot. See *Attorney General v Mich Pub Serv Comm*, 269 Mich App 473, 485; 713 NW2d 290 (2005). Whether the Mendelsons are entitled to a writ of assistance is also rendered moot by this opinion. See *id*. The appeal in Docket No. 364285 is dismissed. We remand so the trial court can consider whether it is proper to award Schmit additional relief. We do not retain jurisdiction. No costs to either side, neither party prevailing in full. MCR 7.219(A).

/s/ Christopher M. Murray
/s/ Thomas C. Cameron
/s/ Sima G. Patel

-7-